**YUKON EQUIPMENT, INC., Appellant,**

v.

**Robert GORDON and Susan Gordon, Appellees.**

**DROTT MANUFACTURING COMPANY, and J.I. Case Company, Appellants,**

v.

**Robert GORDON and Susan Gordon, Appellees.**

**Nos. 6054, 6055.**

Supreme Court of Alaska.

Feb. 25, 1983.

As Amended on Denial of Rehearing May 24, 1983.

Howard Staley, Merdes, Schaible, Staley & DeLisio, Inc., Fairbanks, for Yukon Equipment, Inc., appellant.

Marcus R. Clapp, Doris R. Ehrens, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for Drott Mfg. Co. and J.I. Case Co., appellants.

James A. Parrish, Parrish Law Office, Fairbanks, and Theodore R. Dunn, Goetz, Madden & Dunn, Bozeman, Mont., for appellees.

Before BURKE, C.J., RABINOWITZ, CONNOR and COMPTON, JJ., and HODGES, Judge.*

## OPINION

CONNOR, Justice.

This is a products liability case involving claims for defective design and manufacture of a crane, sale of a defective crane and negligent maintenance.

On June 14, 1976, Robert Gordon suffered serious permanent injuries when the Drott 250 crane he was operating went out of control on a downhill grade on Rosie Creek Road near Fairbanks. The crane was manufactured by Drott Manufacturing Company and sold to Yukon Equipment, Inc. in 1970. Gordon's employer, Adkins Steel Company, purchased the crane from Yukon in 1972.

On June 6, 1978, Robert Gordon and his wife, Susan Gordon, brought suit against Drott and Yukon. Count I of the complaint alleges that Drott is strictly liable for the defective design or manufacture of the crane and count II seeks to hold Yukon strictly liable for selling a defective crane. The alleged defects were in the design and manufacture of the brake and steering systems of the crane. Count III is a loss of consortium claim by Gordon's wife. On April 8, 1980, over Yukon's objection, the Gordons amended their complaint to add a claim against Yukon for negligent maintenance of the crane's braking system. The negligent maintenance claim involves Yukon's failure to rebuild the brake booster, or hydrovac, after a Yukon mechanic discovered a reddish fluid in the brake system.

After trial, the jury rendered a special verdict for the Gordons. The jury found that the crane was defectively designed or manufactured by Drott; that Yukon sold a defective crane;[1] that Yukon was negligent; that each of the foregoing proximately caused the Gordons' injuries; and, that Robert Gordon was 5% contributorily negligent. The jury also found that Robert Gordon sustained damages in the amount of $1,250,000 and that Susan Gordon's damages were $250,000. The superior court thereafter entered a judgment against Drott and Yukon, jointly and severally, for Robert Gordon in the total sum of $1,851,755.47 and for Susan Gordon in the total sum of $350,620.39, which includes pre-judgment interest and attorney's fees. Drott's

---

* Hodges, Judge, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

1. Although the special verdict form did not specifically ask the jury to determine whether Yukon sold a defective crane, the parties agreed that a finding that the crane was defectively designed or manufactured would also operate as a finding that Yukon sold the defective crane.

and Yukon's motions for remittitur or new trial were denied. Drott and Yukon appeal.

## I. YUKON'S CLAIMS

### A. Protective Order

Yukon claims that its ability to conduct discovery was improperly hindered by protective orders granted by the superior court. These orders prohibited Yukon from deposing the expert witnesses of the opposing party until Yukon submitted its own expert witness list for the negligence claim added in its amended complaint.

In its opposition to the motions for protective orders, Yukon argued that it would be inconsistent with the court's earlier ruling to require Yukon to disclose the names of its expert witnesses before December 1, 1980, the time set for the exchange of witness lists. Further, Yukon claimed that it had not yet consulted an expert engineering witness and that its selection of an expert, if any, would depend entirely on the nature of the testimony of the other parties' experts. In addition to these arguments, Yukon argues on appeal that because the time period between the filing of the answer to the amended complaint and the motions for protective orders was only seventeen days, it would be unfair to require Yukon to name its experts so soon.

Trial courts have wide discretion in pre-trial procedure, including orders limiting discovery of expert witnesses. We stated in *Security Industries, Inc. v. Fickus,* 439 P.2d 172 (Alaska 1968):

> "In fashioning an order to guard against any element of unfairness, trial judges are vested with sufficient discretion and flexibility to minimize or eliminate the possibility of any unfairness actually occurring.... The court is also empowered to make discovery of experts or their reports reciprocal by providing for simultaneous exchanges of reports as well as appropriate timing of the taking of depositions. A further possibility is the deferral of any action on discovery motions until all parties to the litigation have disclosed the identity of the experts they intend to call at trial. Imaginative

and creative action by the trial judge is called for...." (Footnotes omitted). 439 P.2d at 178–79.

■ Without a protective order, unfairness may occur, in a case such as the present one, where discovery becomes a vehicle for taking advantage of another's trial preparation, or where discovery serves only to provide a "lead" to obtaining an expert witness. *See* Long, *Discovery and Experts Under the Federal Rules of Civil Procedure,* 38 F.R.D. 111, 125–26 (1966).

■ In the present case, Yukon sought to depose the other parties' expert witnesses without first naming its own expert witness. If allowed to do so, Yukon would have certainly saved considerable time and expense. Furthermore, the results of the deposition would probably direct the focus of the expert witness eventually retained by Yukon, thus freeing that expert from having to independently investigate, analyze, and organize the evidence. To a certain extent, the other parties would pay Yukon's way.

Furthermore, Yukon does not appear to have been prejudiced by the protective orders. The purpose of pre-trial discovery is to make the facts available to all parties. Here, the underlying facts were still discoverable, since the protective orders did not prohibit discovery of witnesses other than experts. Indeed, the person with the most knowledge as to the defectiveness of the brake system was presumably Yukon's own mechanic.

In light of these considerations, we hold that the protective orders were proper.

### B. Exclusion of Expert Witness

■ Yukon claims that the trial court erred in granting Gordon's motion to exclude one of Yukon's expert witnesses because his name was not included in the witness list prepared pursuant to the pre-trial order.

Yukon argues that it was not until December 24, 1980, after having elicited testimony from Gordon's expert engineer, that it decided to use Conrad Hilpert, another engineer, as one of its expert witnesses.

On December 24, Yukon's attorney hand delivered a letter to counsel for Gordon and Drott stating his intention to use Conrad Hilpert as an expert engineer witness, and setting forth his expected testimony. A supplemental witness list was filed with the court on December 30. On the same day, Gordon moved to strike Hilpert as an expert witness. The trial court granted Gordon's motion.

It is implicit in the pre-trial order requiring the exchange of witness lists that the parties were to make up their minds as to who they intended to call at trial by or before December 1, 1980. The precise situation that the protective orders were designed to avoid occurred in this case: as soon as Yukon became informed of the other parties' expert's opinion, it then hired its own expert to rebut that opinion. We hold that in order to prevent Yukon from obtaining an unfair advantage, the trial court correctly excluded Hilpert as an expert witness.[2]

### C. Exclusion of Rohloff's Testimony

■ Yukon also challenges the trial court's exclusion of testimony by its mechanic, Frank Rohloff, pertaining to the results of his inspection of the Drott crane in 1972. Rohloff testified that he had performed a pressure check on the brake lines after rebuilding the master cylinder and that the seals in the master cylinder had appeared normal at the time he rebuilt it. This testimony was stricken as a sanction under Alaska R.Civ.P. 37(d) for failure to make discovery.[3] In the trial court's view, the information should have been disclosed previously in response to an interrogatory sent to Yukon that asked for "all information ... regarding the use of hydraulic fluid in the accident vehicle, including ... a description of any parts replaced as a part of the maintenance performed following the use of hydraulic fluid in the system...."

Alaska R.Civ.P. 33 requires that "each interrogatory shall be answered separately and fully." Clearly, it was not error for the trial court to find that the condition of the seals replaced in the master cylinder and the pressure check should have been described in Yukon's answer to the above-stated interrogatory.

We hold that the sanction excluding the testimony was a proper exercise of the trial court's discretion.

## II. DROTT'S CLAIMS

### A. Causation

■ Drott argues on appeal that the trial judge erred in instructing the jury on proximate cause.

The trial judge gave the following instruction to the jury:

"An act, or a failure to act, is a 'legal' or 'proximate cause' of an injury, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage; and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the act or omission. When I use the terms 'legal cause' or 'proximate cause' in these instructions, I am using them synonymously.

This does not mean that the law recognizes only one legal cause of an injury or

---

**2.** Yukon also argues that it was surprised by Gordons' expert evidence and therefore prejudiced by not being permitted to then endorse an expert of its own. Having reviewed Gordons' answers to Yukon's interrogatories, we conclude that Gordons' position was stated with sufficient particularity so that Yukon could have complied with the witness endorsement requirement.

**3.** Alaska R.Civ.P. 37(d) states in pertinent part:
"(d) *Failure of Party to Attend at Own Deposition or Serve Answer to Interrogatories or Respond to Request for Inspection.* If a party ... fails ... (2) to serve answers or

objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule."
Paragraph (B) states:
"(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence."

damage, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons, may operate at the same time, either independently or together, to cause injury or damage; and in such a case, each may be a legal cause."

Drott proposed that the jury be instructed that, "[a] proximate cause of an injury is the cause which, in natural and continuous sequence, produces the injury, and without which the injury would not have occurred."

The proposed jury instruction incorporates the "but for" or "sine qua non" rule for determining causation. We have recognized on several occasions that the "but for" rule is inapplicable in the situation where two or more forces operate to bring about an injury, and any one of them, operating alone, is sufficient to cause the injury. *Wilson v. City of Kotzebue,* 627 P.2d 623, 630 (Alaska 1981); *Sharp v. Fairbanks North Star Borough,* 569 P.2d 178, 181 n. 7 (Alaska 1977); *State v. Abbott,* 498 P.2d 712, 727 (Alaska 1972). In such cases, using the "but for" test would result in each force being absolved of liability. *Wilson,* 627 P.2d at 630. In the present case, either the defectively designed brakes or the negligently repaired brakes would have been sufficient to cause Gordon's accident. Thus, the jury instruction urged by Drott using "but for" language would have been improper.

Drott additionally argues that the court's failure to give a separate jury instruction on superseding cause constituted reversible error.[4] One of Drott's arguments at trial was that even if the crane's brakes were defectively designed, the subsequent negligent acts of Yukon or its lessee were superseding causes relieving Drott of any

liability. Drott proposed a separate jury instruction on superseding cause which was refused without explanation.

The superseding cause rule was embodied in an instruction given by the superior court. That instruction required, "that the injury or damage [be] either a direct result or a reasonably foreseeable consequence of the act or omission." In order to find that the defective design of the brakes was a proximate cause, the jury was required to find either that Gordon's injury was a direct result of the design defect, because there was no intervening cause, or that Gordon's injury was a reasonably foreseeable consequence of defectively designed brakes, and thus, not extraordinary. We conclude that although a separate instruction on superseding cause may have been helpful, the instruction was adequate as given.

### B. Impact of Income Taxes on the Damage Award

The question we now turn to is whether the failure to give an instruction regarding the impact of federal taxes on an award of damages constituted error. The trial court refused a jury instruction proposed by Drott which stated: "Your award of damages in this case, if any, will not be subject to any income taxes and you should not consider such taxes in fixing the amount of your award."

This issue is one of first impression in Alaska. Drott urges us to adopt the approach taken in *Norfolk & Western Railway Co. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689, *reh'g denied,* 445 U.S. 972, 100 S.Ct. 1667, 64 L.Ed.2d 250 (1980). In *Norfolk,* the United States Supreme Court held that it was reversible error to

---

4. We have recognized that even if a defendant's conduct is an actual cause of an injury, it may be held not to be a legal cause of the injury. *Sharp v. Fairbanks North Star Borough,* 569 P.2d at 178, 182–84 (Alaska 1977). This occurs "where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." Restatement (Second) of Torts § 435 (1965). A resulting harm is extraordinary

when it would not have occurred without the act of a third person or other force following the defendant's negligence. This intervening force is a "superseding cause" which relieves the defendant from liability. *Id.* The considerations which impel cutting off liability where there is a superseding cause in negligence cases also apply in absolute liability cases. *See Yukon Equipment v. Fireman's Fund Insurance Co.,* 585 P.2d 1206, 1211 (Alaska 1978).

refuse to instruct the jury that the award of damages would not be subject to income taxation.

Although the weight of authority does not require an instruction on federal taxes, persuasive arguments exist on both sides of the question. *See Barnette v. Doyle,* 622 P.2d 1349, 1366 (Wyo.1981); Annot., 63 A.L. R.2d 1393, 1408 (1959). On the one hand, such an instruction serves to prevent the jury from improperly increasing the award to protect the plaintiff from the impact of income taxes. *Norfolk,* 444 U.S. at 498, 100 S.Ct. at 759, 62 L.Ed.2d at 696; *Tenore v. Nu Car Carriers, Inc.,* 67 N.J. 466, 341 A.2d 613, 629 (N.J.1975). On the other hand, a jury may do just the opposite, and mitigate the award by reason of the income tax exemption. *Raines v. New York Central Railroad Co.,* 51 Ill.2d 428, 283 N.E.2d 230, 232 (Ill.1972) *cert. denied* 409 U.S. 983, 93 S.Ct. 322, 34 L.Ed.2d 247 (1972). Another reason for not requiring an instruction on federal taxes is the belief that a jury should not receive such an instruction when it is not also instructed with respect to attorney's fees, the costs incurred in preparing a case, or the various types of insurance that may be involved. *Barnette,* 622 P.2d at 1367.

█ We are persuaded by the reasoning of Judge Friendly in *McWeeney v. New York, New Haven and Hartford Railroad Co.,* 282 F.2d 34, 39 (2d Cir.1960), that, "[b]efore an appellate court should hold that failure to give such a cautionary instruction was reversible error, there ought to be evidence either that juries in general increase recoveries on this account or that the particular jury did so." In the absence of such evidence in the case at bar, we hold that the superior court's failure to give a "tax" instruction did not amount to reversible error.

C. Impact of Income Taxes On Future Damages.

█ Consistent with our ruling in *Beaulieu v. Elliott,* 434 P.2d 665 (Alaska 1967), the trial court instructed the jury that "[i]n determining *future* damages, you may not consider factors such as taxes, increases in wages, or inflation, to alter that sum, either upward or downward." (Emphasis added). Drott now argues that giving this instruction was reversible error, and that this court should overrule *Beaulieu.*

In *Beaulieu,* we explained our reason for holding that an amount representing future income taxes should not be deducted from the award:

"Income tax rates, provisions relating to deductions and exemptions, and other aspects of income tax laws and regulations are so subject to change in the future that we believe that a court cannot predict with sufficient certainty just what amounts of money a plaintiff would be obliged to pay in federal and state income taxes on income that he would have earned in the future had it not been for a defendant's tortious conduct."

434 P.2d at 673. Cases holding to the contrary argue that future taxes are no more speculative than other considerations about future losses. *Norfolk,* 444 U.S. at 494, 100 S.Ct. at 757, 62 L.Ed.2d at 694 (1980); *Burlington Northern, Inc. v. Boxberger,* 529 F.2d 284, 292–93 (9th Cir.1975). These cases insist that their approach "more accurately harmonizes with fair economic reality, more justly achieves the goal of compensating claimants for the actual loss suffered, and safeguards against the injustice of overcompensation." *Burlington Northern, Inc.,* 529 F.2d at 298 (footnotes omitted).

The rationale of our holding in *Beaulieu* remains valid today, and we refuse, therefore, to overrule our decision in that case. If we were to overrule *Beaulieu,* we would risk making the tax question a collateral trial issue, a result more burdensome than beneficial to the administration of justice. As we recognized in *Beaulieu,* "a court cannot predict [the amount of future taxes] with sufficient certainty." 434 P.2d at 673. Balanced against this consideration is the burden of having to speculate regarding the extent of the plaintiff's future tax liability for his damage award. Therefore, we hold that the trial court did not err when it

instructed the jury to disregard income taxes in determining *future* damages.

### D. Loss of Consortium

 Drott argues on appeal that the lower court erred in denying its motion for remittitur of $200,000 or a new trial on Susan Gordon's claim for loss of consortium because the jury's award of $250,000 was excessive as a matter of law. When reviewing a jury's verdict, the trial court shall not find an award of damages excessive unless it is so large as to be "manifestly unjust," i.e., the result of passion, prejudice, or a disregard for evidence or rules of law. *Fruit v. Schreiner*, 502 P.2d 133, 145 (Alaska 1972). The reasonableness of the jury's award is left to the sound discretion of the trial court and will not be interfered with, except in the most exceptional circumstances, to prevent a miscarriage of justice. *See City of Nome v. Ailak*, 570 P.2d 162, 173 (Alaska 1977).

The jury's damage award in the case at bar does not amount to a miscarriage of justice. Robert Gordon suffered serious and permanent injuries which, together with a resulting change in personality, have had a substantial impact on his marriage and sexual activity.

Based on the record as a whole, it is our opinion that the superior court did not err when it refused to order remittitur or grant Drott a new trial. The superior court's judgment as to Drott's motion is accordingly affirmed.

### E. Warranty Reports

 Drott contends that the trial court's instruction on the limited purpose for which certain hearsay was admitted was inadequate.

During the course of the trial, twenty-eight "warranty claim request" forms were introduced into evidence by the various parties. These forms were filled out by independent distributors of Drott cranes. Each contained customer complaints and the spe-

cific action taken by the distributor in response to the complaints. When the first form was admitted, the trial court instructed the jury that the forms were admissible to show that Drott had notice of design defects, but that the forms were inadmissible hearsay for other purposes. The remainder of the forms were introduced into evidence without a similar limiting instruction. The trial court refused to give Drott's proposed supplemental jury instruction regarding the limited purpose for which the forms were admitted since it had already so instructed the jury.[5]

Drott argues that the court's original instruction to the jury was not enough because three weeks had passed from the time of the original instruction to the end of the trial. According to Drott, the danger that the jury would consider the evidence for inadmissible purposes was particularly strong because the claim forms were exhibits the jury would take into the jury room.

We find that the limiting instruction given when the reports were first offered at trial was sufficient to alert the jury that it was to consider the evidence for limited purposes only. When evidence is received it is important that a limiting instruction be given simultaneously:

> "Timing of the instruction on limited admissibility is particularly important. The jury may be instructed either as the evidence is admitted or as part of the general charge. There are sound reasons for encouraging the practice of giving limiting instructions as the evidence is received. The impact of evidence in a case tends to be cumulative, each segment building on the evidence that preceded it. The jury will probably get a clearer picture of the interrelation between the evidence and the factual issues to which they are relevant if the limitations of the evidence are spelled out as it is presented." (Footnotes omitted).

1 Weinstein, *Evidence*, ¶ 105[05], at 105–37 through 105–38 (1982).

---

**5.** The court also noted that the proposed instruction was incorrect since the forms were also admissible to show feasibility of repairs.

Drott would have agreed to such a modification of the instruction.

In this case, it would have been preferable for the court to re-instruct the jury. Its failure to do so, however, did not so prejudice Drott as to constitute reversible error. Therefore, we affirm the superior court's ruling on the offered instruction.

### F. Test Performed by Yukon

 Shortly before trial, Rohloff (Yukon's mechanic), Sundborg (Yukon's expert mechanic) and Yukon's attorney conducted experiments on the brake system of the same crane involved in Gordon's accident. Drott attempted to introduce evidence of the experiments at trial. The trial court determined that the evidence was relevant, but that it was inadmissible because it was cumulative.

Drott argues that the evidence should have been admitted. The purpose of the proffered testimony was not to have the jury draw conclusions about the particular crane, but to show the capabilities of Drott 250 cranes in general. According to Drott, the results of the experiments showed that the brake system, if properly maintained, was not defective. Drott argues that having an adverse party perform the tests merely made the results dramatic and probative.

> Alaska Rule of Evidence 403 provides: "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

As Gordon argues, there was a danger of unfair prejudice from the brake test evidence because the testing procedure was slipshod and no written records were kept. Because the tests were performed on the same crane that was involved in Gordon's accident, there was also a danger that the issues would be confused, or the jury would be misled by the test results. Further, as the trial court found, the evidence was cumulative. In light of these considerations, we hold that the trial court did not abuse its discretion in deciding that the probative value of Yukon's experiment results was outweighed by the possibility of resulting jury prejudice and undue trial delay.

The judgment below is AFFIRMED.