Pauline WILLIFORD, personal representative of the estate of Gilbert Tomaganuk, Appellant,

v.

L.J. CARR INVESTMENTS, INC., BJG Investments, Inc., Joe Wiley Investments, Inc., Oaken Keg Spirit Shop # 52, a general partnership, and Craig Smalls, Appellees.

No. S–2519.

Supreme Court of Alaska.

Nov. 24, 1989.

William W. Whitaker, Kenneth A. Norsworthy & Associates, Anchorage, for appellant.

Michael Moxness, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal is from an order of the superior court granting Oaken Keg[1] summary judgment in a wrongful death action brought by Pauline Williford, personal representative of the Estate of Gilbert Tomaganuk ("the Estate"). Tomaganuk was killed when struck by a car driven by Derald Beigelow in Anchorage April 5, 1985. The Estate alleges that the Oaken Keg caused Tomaganuk's death by providing

1. Appellees L.J. Carr Investments, Inc., BJG Investments, Inc., and Joe Wiley Investments, Inc. are partners in the partnership which operates Oaken Keg. Appellee Craig Smalls is the clerk at the Oaken Keg who allegedly sold the alcohol at issue in this case. For purposes of simplicity, these four parties will be referred to collectively as "Oaken Keg."

vodka to Tomaganuk and his nephew, Isaac, while both men were intoxicated.

In entering summary judgment the superior court ruled that the Estate's claim failed as a matter of law (a) because Beigelow's negligence was a superseding cause of Tomaganuk's death, thereby relieving Oaken Keg and its employees of liability under AS 04.21.020; and (b) because Isaac, not Tomaganuk, purchased the alcohol. This appeal followed.[2]

## I. STANDARD OF REVIEW.

We review the superior court's conclusions of law. Review is therefore *de novo*. "Our duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979). We read the record in the light most favorable to the appellant. *See, e.g., Carter v. Hoblit*, 755 P.2d 1084, 1085 n. 1 (Alaska 1988) (citing *B–E–C–K Constructors v. State, Dep't of Highways*, 604 P.2d 578, 581 n. 4 (Alaska 1979)).

## II. FACTS AND PROCEEDINGS.

Gilbert Tomaganuk met his nephew, Isaac, in downtown Anchorage at about noon on April 5, 1985. From that time until about 10:15 p.m., when the fatal accident occurred, the two men shared approximately two quarts of vodka. They purchased the first bottle (a fifth) at about 12:30 p.m. at the Safeway liquor store. While walking around town, both men drank from the bottle. Tomaganuk drank about three-quarters of the bottle, and Isaac drank the rest, which they finished shortly after 2:30 p.m. Isaac became intoxicated, but apparently not so intoxicated as his uncle, who several times fell asleep in the street.

At about 5:45 p.m. Tomaganuk and Isaac went into the Safeway liquor store for more vodka. Tomaganuk tried to make a purchase but was refused because he was intoxicated. Isaac too was intoxicated at the time and was having trouble keeping his balance. The two men then walked to the Oaken Keg. Tomaganuk gave his nephew money to purchase vodka, then followed "right behind" his nephew for six to seven minutes while they walked around the inside and discussed what they should purchase. Isaac took a quart of vodka from the shelf and brought it to the cashier, Craig Smalls. At this time there was no one else in the line, and only two or three other customers in the store. Isaac's hands were shaking, and he was "breathing hard" from the cold. Tomaganuk stood seven or eight feet behind Isaac. Isaac exchanged a few words with the clerk, purchased the alcohol and some candy, then staggered from the store with Tomaganuk three to five feet behind. Isaac stated that he did not try to appear sober while he was in the Oaken Keg; that his uncle staggered while inside; and that Isaac could smell alcohol on his own breath and on his uncle's at the time.

Tomaganuk and Isaac proceeded from the Oaken Keg to Tomaganuk's "camp" near a ditch in a wooded area. There the two men finished the vodka, sharing this bottle evenly. Three or four hours after leaving the Oaken Keg, the two men left their camp to get some food. They crawled up an embankment and tried to cross 15th Avenue approximately 400 feet west of an intersection at Cordova Street. According to Isaac, Gilbert Tomaganuk had crossed the street's center line when both men were struck by a speeding westbound car. Apparently neither Isaac, his uncle, nor the driver, Derald Beigelow, were sober when the accident occurred.[3]

**2.** The Estate's complaint in superior court alleged that Beigelow, the Oaken Keg, and the Pierce Street Annex (where Beigelow had been drinking before the accident) caused Tomaganuk's death. However, all claims against Beigelow (who apparently fled Alaska and has not been served with process) have been dismissed without prejudice, and a default judgment has been entered against Pierce Street Annex.

Thus, only the claims against Oaken Keg remain.

**3.** Derald Beigelow left the scene of the accident but was arrested later that night. Breath tests administered to Beigelow at 11:09 p.m. and 11:47 p.m. registered alcohol levels of 0.168 and 0.170, respectively.

## III. SUPERSEDING CAUSE.

Oaken Keg contends that Derald Beigelow's actions constituted a "superseding cause" of Tomaganuk's death, thereby relieving Oaken Keg of any liability for the allegedly negligent acts of its cashier. We disagree.

 Superseding cause is a variant of the doctrine of proximate cause. This court has explained that the doctrine of superseding cause will relieve a negligent actor of liability only in exceptional cases. *Dura Corp. v. Harned,* 703 P.2d 396, 403 (Alaska 1985). We have explained that an action of a third person which intervenes to injure the plaintiff will shield a negligent defendant only " 'where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court *highly extraordinary* that it should have brought about the harm.' " *Yukon Equip., Inc. v. Gordon,* 660 P.2d 428, 433

n. 4 (Alaska 1983) (*Yukon II*) (emphasis supplied) (quoting Restatement (Second) of Torts § 435(2) (1965) (hereinafter Restatement)), *quoted in Dura Corp.,* 703 P.2d at 402, and in *Morris v. Farley Enterprises, Inc.,* 661 P.2d 167, 170 (Alaska 1983);[4] *see also* Restatement § 435 comments c, d, e.[5] Thus, an act will not constitute a superseding cause where, though unforeseeable by the original negligent actor, it does not appear in retrospect to have been highly extraordinary. *See* Restatement § 435 comment d.

The evidence in the instant case, when viewed in the light most favorable to the Estate, shows that Smalls, the Oaken Keg clerk, may have known that Isaac was accompanied by another man and that both men were drunk when Smalls sold Isaac the vodka.[6] Statements by Isaac and a third party witness[7] suggest that Tomaga-

---

**4.** In *Morris,* the defendant liquor store illegally sold alcohol to a seventeen-year-old, Randy Hanson. 661 P.2d at 168. Hanson shared the alcohol with his four companions, including David Anderson, the driver of the automobile they were all occupying, and Elmer Morris. Anderson became intoxicated and made an illegal left-hand turn, causing a collision in which both Hanson and Morris were killed. *Id.* This court held "that the wrongful conduct of Randy Hanson in providing David with the means of becoming intoxicated did not amount to a superseding cause as a matter of law and therefore did not relieve [the liquor store] of liability [for the deaths of Hanson and Morris]." *Id.* at 170. The court ruled that "[i]t was neither unforeseeable nor extraordinary that the youth who purchased liquor would share it with his companions and that an automobile accident caused by the companion's intoxication would result." *Id.*

**5.** As explained in the Restatement, "the court, knowing that such a force has intervened, may see nothing extraordinary either in its intervention or in the effect which it has upon the further development of the injurious results of the defendant's conduct." § 435 comment d at 453; *see also* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 44, at 302–03 (5th ed. 1984). We overrule the dictum in *Yukon II,* which states: "A resulting harm is extraordinary when it would not have occurred without the act of a third person or other force following the defendant's negligence." 660 P.2d at 433, n. 4. Were this the rule, then all foreseeable, causative acts of third persons would serve to shield negligent actors from liability. That is, all "intervening

causes" would be deemed "superseding causes" as well. This is not the rule we have applied where the operative question is whether the act was so "unforeseeable" that it is viewed as "highly extraordinary." *See Dura Corp.,* 703 P.2d 402–403; *see Yukon II,* 660 P.2d at 433.

**6.** Smalls has no recollection of the sale.

**7.** Claudia Warren observed the incident while approaching Tomaganuk and Isaac in her vehicle from the opposite direction. Her statement to the police described the two men's attempt to cross the street:

> They were just off the edge of the road. One man sorta stepped into the road like he was gonna cross ... and ... they kind of hesitated and I slowed down because I didn't know whether they'd step out in front of me or—or what.... [T]hey weren't in any hurry, they were walking across my lane, going north across the street.... And I was watching ahead to see if they'd get anyone coming the other way 'cause I n-noticed—I was a bit surprised that they were walking so slowly and they got sort of ... most of the way across the street when I saw a headlight coming the other direction and the car crested over the top and they were still walking when I first noticed—this happened very quickly, but they were still walking and I 'member just conscious—quickly thinking ... they'd better run. One of the guys started to sort of try to run out of the way, the car was coming pretty fast.

Isaac never saw Claudia Warren's car, and saw the headlights of Beigelow's car only shortly before impact. He states that it was dark at the time of the accident, and that there were no street lights nearby.

nuk's intoxication may have been a cause of the accident. It is not "highly extraordinary" that an intoxicated person might be struck by a speeding car on a dark road, driven by a drunken driver.[8] Neither is the accident extraordinary for Oaken Keg's professed inability to foresee the accident in all its detail;[9] rather, we have held that "[w]hen the risk created causes damage in fact, insistence that the precise details of the intervening cause be foreseeable would subvert the purpose of that rule of law." *Yukon Equipment, Inc. v. Fireman's Fund Insurance Co.*, 585 P.2d 1206, 1212 (Alaska 1978) (*Yukon I*).

Finally, an additional and related rule of liability which precludes a finding of superseding cause is that "[w]here the negligent conduct of the actor creates or increases the foreseeable risk of harm through the intervention of another force, and is a substantial factor in causing the harm, such intervention is not a superseding cause." *Osborne v. Russell*, 669 P.2d 550, 557 (Alaska 1983) (quoting Restatement § 442A).

■■■ Appellants therefore allege facts which, if undisputed, preclude a finding of superseding cause. Where material facts remain in dispute, the question whether an intervening causal act was highly extraordinary should not be decided on summary judgment, but instead should be left for the trier of fact. *See Sharp v. Fairbanks North Star Borough*, 569 P.2d 178, 183–84 (Alaska 1977). The superior court thus erred in ruling that Beigelow's act constituted a superseding cause.

## IV. LIABILITY UNDER AS 04.21.020.

The Estate asserts both common-law and statutory causes of action against Oaken Keg. The common-law claims are no longer viable.[10] We therefore focus upon the relevant statutes, AS 04.21.020 and AS 04.-16.030.

The current text of AS 04.21.020 is as follows:

A person who *provides* alcoholic beverages to another person may not be held civilly liable for *injuries resulting from*

---

**8.** In his affidavit, the Estate's attorney referred to evidence indicating that Beigelow's intoxication did not cause the accident. Counsel for the Estate stated that he had spoken to the district attorney, who had determined that criminal charges should not be brought against Beigelow based in part on reconstructive tests of the accident. Counsel for the Estate further averred that the District Attorney was willing to testify that these tests indicated that it was likely that Beigelow would have collided with Tomaganuk and Isaac even if Beigelow had been sober and driving at the speed limit. Oaken Keg correctly asserts that a hearsay assertion in an attorney affidavit is inadmissible for purposes of summary judgment. *See National Indem. Co. v. Flesher*, 469 P.2d 360, 367–68 (Alaska 1970). Neither party mentions whether proper objection to this affidavit was ever made, and no transcript of the summary judgment hearing is available because the recording has been lost.

Oaken Keg also disputes whether the Estate should be able to rely on evidence in the deposition of a passenger in Beigelow's car, Willie Davis. Davis states that Beigelow was driving recklessly. However, Isaac too makes this statement. Adequate evidence is therefore validly before us, and so we need not resolve the question whether the Estate may rely on Davis' deposition.

**9.** Oaken Keg argues that application of the six factors set forth in section 442 of the Restate-

ment and quoted in *Sharp v. Fairbanks North Star Borough*, 569 P.2d 178, 183 (Alaska 1977), is dispositive of the superseding cause issue in this case. The question of the foreseeability of an intervening act enters into only one of the Restatement's considerations, b. We hold that in cases where the intervening act is not so unforeseeable as to render it "highly extraordinary," the additional Restatement criteria set forth in paragraphs a, c, d, e, and f have no bearing. In other words, if the intervening act is not "highly extraordinary," this justifies holding the prior tortfeasor liable despite any intervening act. We have implicitly followed this rule in the past. *See Gordon v. Alaska Pac. Bancorp*, 753 P.2d 721, 725 (Alaska 1988); *Dura Corp.*, 703 P.2d at 402–03; *Morris*, 661 P.2d at 170; *cf. Sharp*, 569 P.2d at 182–83 (Restatement § 442 factors considered where intervening act was first deemed "highly extraordinary").

**10.** In *Nazareno v. Urie*, 638 P.2d 671 (Alaska 1981) (overruled in part in *Kavorkian v. Tommy's Elbow Room, Inc.*, 711 P.2d 521 (Alaska 1985)), this court held that the sale of liquor to an intoxicated person could form the basis for a common-law negligence action. *Id.* at 673–74. However, the court's decision was explicitly limited to cases arising prior to the enactment in 1982 of AS 04.21.020, which restricted the civil liability of persons serving alcohol. *Id.* at 675 n. 5; ch. 131, § 5, SLA 1980.

*the intoxication of that person* unless the person who provides the alcoholic beverages holds a license authorized under AS 04.11.080—04.11.220, or is an agent or employee of such a licensee and

(1) the alcoholic beverages are provided to a person under the age of 21 years in violation of AS 04.16.051, unless the licensee, agent, or employee secures in good faith from the person a signed statement, liquor identification card, or driver's license meeting the requirements of AS 04.21.050(a) and (b), that indicates that the person is 21 years of age or older; or

(2) the alcoholic beverages are provided to a drunken person in violation of AS 04.16.030.

(Emphasis added.)

Alaska Statute 04.16.030 states in relevant part:

A licensee, an agent, or employee may not with criminal negligence (1) sell, give, or barter alcoholic beverages to a drunken person. . . .

Oaken Keg interprets the word "provides" in AS 04.21.020 narrowly, arguing that a vendor "provides" alcohol only to the person who actually purchases it. The Estate argues that under the facts of this case Oaken Keg had "provided" alcohol both to the actual purchaser, Isaac, and to Tomaganuk.

In interpreting a statute we must first look to its language. The word "provide" is commonly used to mean "to make available; supply; afford ... to furnish with." *Webster's New World Dictionary* 1144 (2d college ed. 1972). We conclude that a vendor may "provide" alcohol even unwittingly to third parties. The protection of AS 04.-21.020 lies in its further requirement that the vendor first, with criminal negligence "sell, give or barter" that alcohol to a drunken person in violation of AS 04.16.-030.

■ The intent of the legislature in enacting AS 04.21.020 was to limit vendor liability in cases where the vendor has provided alcohol in a statutorily permissible manner. We hold that AS 04.21.020 does not immunize vendors who violate AS 04.-16.030.[11] We remand to determine whether Oaken Keg sold vodka to Isaac "with criminal negligence"[12] in violation of AS 04.16.-030, and if so, whether Tomaganuk's inju-

---

11. By contrast, consistent with legislative intent, a vendor who furnishes alcohol to sober persons will not be held liable under AS 04.21.020, regardless whether the vendor thereby indirectly provides the alcohol to an intoxicated third person. *See* Senate Journal Supp. No. 23, at 20 (Apr. 1, 1980).

12. The legislature has defined "criminal negligence" in this context as follows:

[A] person acts with "criminal negligence" with respect to a result or to a circumstance described by a provision of law defining an offense when the person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists; the risk must be of such a nature and degree that the failure to perceive it constitutes a *gross deviation* from the standard of care that a reasonable person would observe in the situation.

Alaska Statute 04.21.080(a)(1) (emphasis added). The Senate has explained what it considers to be a "gross deviation" from the standard of care:

This section [AS 04.16.030] places a duty upon the seller, server, or giver of intoxicating beverages before he or she sells, serves or gives intoxicating beverages to a person to use their powers of observation to see that which can easily be seen, and hear that which can easily be heard, under the existing conditions and circumstances and to determine whether the person is so far under the influence of intoxicating beverages that his conduct and demeanor are drunken and such drunken conduct or demeanor should be reasonably discernible to a person of ordinary experience in dispensing alcoholic beverages who has a duty to observe persons to whom alcoholic beverages are dispensed.

The use of intoxicating liquor by the average person in such quantity to produce drunkenness causes many commonly known outward manifestations which are "plain" and "easily seen or discovered" and when such manifestations exist and a licensee, his agent, or employee still sells, serves, or gives to a person so affected, he has violated this section whether this was because he failed to observe what was plain or easily seen or discovered, or because, having observed, he ignored that which was apparent.

Senate Journal Supp. No. 23, at 15–16 (Apr. 1, 1980). There remains a question of material fact as to whether the Oaken Keg clerk should have observed alleged manifestations of drunkenness on Isaac's part. According to Isaac's testimony, he was shaking, not walking normally, and could smell alcohol on his own breath.

ries resulted either from his own intoxication or that of his nephew. The appropriate standard of proximate causation is described in *Kavorkian v. Tommy's Elbow Room,* 711 P.2d 521 (Alaska 1985). Specifically, the plaintiff need not prove that Gilbert's death resulted from intoxication induced by the specific bottle of vodka Oaken Keg provided to Gilbert and Isaac. *See id.* at 523; *see also* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 41 (5th ed. 1984). However, plaintiff must establish all other elements of proximate cause, including the necessary assertion that the chain of events leading from Oaken Keg's alleged negligence to Tomaganuk's death was not, in retrospect, "highly extraordinary." *See Osborne v. Russell,* 669 P.2d 550, 556

(Alaska 1983) "[t]his is the case 'where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm'" (quoting *Sharp,* 569 P.2d at 182); *see also* Restatement § 435 comments a and d.[13]

The superior court's order of summary judgment in favor of Oaken Keg is RE-VERSED, and this case REMANDED for proceedings consistent with this opinion.[14]

---

**13.** Comment d illustrates the distinction between unforeseeable injury (which will not defeat liability) and highly extraordinary injury (for which it would be unfair to hold a defendant liable) by the following example:

[A] captain of a vessel, seeing men at work on a dock, may realize the necessity of docking gently so as not to cause harm to any of the workmen, but he would not expect a workman out of his sight to be upon a plank kept in position by the pressure of two pilings. None the less, the court, knowing this, as it

must after the accident occurs, would find nothing highly extraordinary in the fact that the negligent bumping of the ship against the dock should cause the pilings to spring apart, thus releasing the board and causing the workmàn to fall between the pilings, which as they sprang together crushed him.

**14.** We have considered Oaken Keg's remaining arguments and conclude that they are without merit.