Elaine VINCENT, by her legal guardian,
Tim STATON, Appellant,

v.

FAIRBANKS MEMORIAL HOSPITAL,
and Lutheran Hospitals and Homes
Society of America, Inc., Appellees.

No. S–4553.

Supreme Court of Alaska.

Oct. 29, 1993.

L. Ames Luce, Dan A. Hensley, Luce & Hensley, Anchorage, for appellant.

Howard A. Lazar, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and COMPTON, JJ.

*OPINION*

RABINOWITZ, Chief Justice.

In this appeal, we must determine if the superior court's causation instruction constituted prejudicial error.

### FACTS & PROCEEDINGS

On December 11, 1988, at 6:14 a.m., Elaine Vincent (Vincent) was admitted to the emergency room at Fairbanks Memorial Hospital (FMH), for treatment of severe abdominal cramps which were accompanied by vomiting and diarrhea. Vincent was attended to by Kathy Stevens, RN, who took a history and assessed Vincent's condition. Nurse Stevens later testified that Vincent appeared to need fluids, but that her condition did not seem extraordinary.[1]

Dr. Richard Foutch was the emergency room physician who was on duty. He ordered several blood tests, the administration of Compazine to stop Vincent's vomiting, and an intravenous transfusion of two liters of saline solution. The Compazine was administered at 6:50 a.m. The IV transfusion began at approximately 7:00 a.m.

Dr. Foutch went off duty at 7:00 a.m., and was replaced by Dr. Steven McCormick. At that time, Dr. Foutch informed Dr. McCormick that lab work and an IV transfusion had been initiated. Dr. Foutch and Dr. McCormick briefly discussed possible causes for Vincent's symptoms, including gastroenteritis, food poisoning, or an exacerbation of her ulcers.

At approximately 7:25 a.m. Dr. McCormick received Vincent's electrolyte levels from the laboratory. Based on this information, as well as his subsequent examination of Vincent, which included taking her pulse, Dr. McCormick thought that she was stable. He ordered the addition of potassium to her IV fluids, a series of X-rays, and the intravenous administration of Mepergan, which is a combination of Demerol and Phenergan. The Mepergan was administered by Nurse Billy Mitchell at 7:37 a.m. After administering the Mepergan, Nurse

---

1. Vincent's temperature was 95.3°F; normal is 96°F to 99°F. Her pulse rate was 112; normal is 60–90. Her respiration rate was 36; the normal range is 12–20. Her blood pressure was 80/50; the normal range is 90/60 to 130/90.

Mitchell left Vincent's room. When he returned, a brief period of time later, Vincent began convulsing in what Mitchell described as "some kind of seizure activity." Vincent subsequently experienced cardiac arrest. As a consequence she sustained permanent, debilitating brain damage.

Vincent alleged that this injury was caused by the FMH emergency room staff's failure to diagnose and treat her extreme fluid loss, a condition known as "hypovolemia" (hypo = low; volemia = volume). She argued that she was the victim of a series of negligent medical acts committed by Nurse Stevens, Nurse Mitchell, and Dr. McCormick.[2]

FMH argued that it had not been negligent. Additionally, FMH argued that Vincent possessed a unique physiology which had caused her to react abnormally, independent of treatment, to both her condition and to the hospital's care. Specifically, at trial, FMH elicited testimony from Dr. Nancy Lewis, a member of an expert advisory panel appointed pursuant to AS 09.55.-536,[3] who stated that, left untreated, Vincent's condition would have resulted in death.[4] FMH also established, through the testimony of Dr. Peggy Goldman, that "there must—must have been something kind of funny going on ... I mean, I can guess at it and I have my own particular

ideas about what might have happened or why she was really so sick and nobody could see that or whatever." Additionally, FMH introduced testimony of a toxicologist, Dr. Randall Basalt, that Vincent had experienced a rare allergic reaction to the Mepergan. FMH argued that it should not be held responsible for the fact that Vincent was "different."[5]

Vincent proposed a multiple cause jury instruction which read:

> I will now define "legal cause" for you. A legal cause of injury or damage is a cause which is a substantial factor in bringing about the injury or damage.
>
> This does not mean that the law recognizes only one legal cause of an injury or damage, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons may operate at the same time, either independently or together, to cause injury; and in such case each may be a legal cause.

FMH's proposed causation instruction provided:

> A legal cause of damage is a cause which is a substantial factor in bringing about the damage.

2. Briefly, Vincent alleged that several acts or omissions by hospital staff were causally related to her injury, including inadequate testing of vital signs, inadequate documentation of nursing care, failure to monitor and record fluid loss, negligent administration of Mepergan, a narcotic known to reduce blood pressure, administration of an overdose of Mepergan, and failure to monitor after administration of the Mepergan.

3. Alaska Statute 09.55.536 provides in part:
   (a) In an action for damages due to personal injury or death based upon the provision of professional services by a health care provider ... the court shall appoint ... a three-person expert advisory panel....
   ....
   (c) [The panel] shall make a written report to the parties and to the court....

4. On cross-examination by Vincent, Dr. Lewis explained that the panel believed that Vincent was suffering from a preexisting condition of extreme acidosis.

5. In its closing argument, FMH stated:
   Now, we all sweat under the same sun, we look up and gaze at the same moon, but we're all a little bit different.... But one thing is abundantly clear from the evidence that's been presented and that is that Elaine Vincent, physiologically, was undeniably a little bit more different.... [H]er hair [fell] out at age eight, a very odd occurrence. You have the history of cervical and bone cancer.... You have the ulcer history ... the history of alcoholism, and ... an allergic reaction to Codeine. [Such a reaction is] extremely rare. But that's Elaine Vincent.... That was an incredibly unusual occurrence back then. This was an incredibly unusual occurrence on December 11th, 1988. And the one basic question that I think you must ask yourselves, is ... [i]s it just to hold the hospital responsible for a damned—whether or not you call it a damned unusual or an extraordinary or highly unusual event, is it just to hold them responsible for that type of occurrence?

An act or failure to act is a substantial factor in bringing about damage if it is more likely true than not true that:

1. the act or failure to act was so important in bringing about the damage that a reasonable person would regard it as a cause and attach responsibility to it; and

2. the damage would not have occurred but·for the act or failure to act.

Vincent objected to FMH's proposed instruction and contended that the "but for" instruction was inapplicable for two reasons: first, that she had alleged negligence by several nurses and doctors at the hospital; and second, that FMH had alleged in its pleadings both "that multiple causes contributed to the injuries suffered by Elaine Vincent [and] that the plaintiff's own negligence was a legal cause of her injuries."

At the close of evidence, the parties conferred with the court on jury instructions. Vincent again objected to the "but for" instruction, arguing "that in cases where there are facts that show a combination of acts working together produced an injury, that the but for test can exonerate everyone. . . ."

The superior court gave the jury the following causation instruction, which combined the "but for" and multiple cause tests in the following manner:

In order to prove liability the plaintiff must prove not only that Fairbanks Memorial Hospital, Nurse Stevens, Nurse Mitchell, or Dr. McCormick or any combination of them was negligent, but also that their negligence legally caused the plaintiff's damages.

I have already defined negligence for you and I will now define legal cause.

A legal cause of injury or damage is a cause which is a substantial factor in bringing about the injury or damage. An act or failure to act is a substantial factor in bringing about the injury or damage if it is more likely true than not true that:

1. the act or failure to act was so important in bringing about the injury or damage that a reasonable person would regard it as a cause and attach responsibility to it; and

2. the injury or damage would not have occurred but for the act or failure to act.

There may be more than one legal cause of injury or damage. A person's negligence may combine with another cause (either the acts of another person or some force of nature) to produce injury or danger. If you find a person's negligence is a legal cause of injury or damage, that person may not avoid legal responsibility merely because some other cause also caused or helped cause the injury or damage.

In closing arguments, FMH's counsel urged the jury to apply the "but for" portion of the court's legal instruction.[6] Vincent's counsel argued that the concurrent cause rule was more appropriate.

In a special verdict the jury found that Vincent received negligent medical care. The jury also found that the negligent medical care was not "a legal cause" of Vincent's permanent brain injury. On appeal, Vincent argues that the superior court's

---

**6.** FMH's counsel, however, only illustrated the "but for" instruction by asking the jury to assume for purposes of illustration that the IV was started only after an unreasonable delay. He then told the jury that only if the jury believed that Vincent would not have been injured had the IV been started more quickly could the delay in starting the IV be considered a legal cause of the injury. He then went on to argue that the alleged delay in starting the IV and the various alleged failures in monitoring Vincent's status prior to the administration of Mepergan were irrelevant because Vincent's status was known, and known to be stable, by Dr.

McCormick as of the time he ordered Mepergan to be administered. Defense counsel then went on to argue that Vincent had an allergic reaction to Mepergan which caused her seizure and that the possibility of this happening was so remote that it could not have reasonably been foreseen. At no time did counsel for the defendant suggest that even if some aspect of the care given Vincent was negligent and might otherwise have caused her seizure, her seizure would have occurred in any case from independent causes and therefore defendant's conduct could not be the legal cause of Vincent's injuries under the court's instructions.

legal causation instruction was erroneous because the court used the "but for" causation test.

## DISCUSSION

### STANDARD OF REVIEW

In evaluating whether there has been prejudicial error, the reviewing court must put itself in the position of the jurors and determine whether the error probably affected their judgment. *Alaska Pac. Assurance Co. v. Collins*, 794 P.2d 936, 947 (Alaska 1990).

### I. CAUSATION IN NEGLIGENCE ACTIONS IN GENERAL

Causation in negligence actions has been recognized as a confusing concept. *See* W. Page Keeton et al., *Prosser and Keeton on Torts* § 41, at 263 (5th ed. 1984). Accordingly, we begin our discussion with a review of the subject generally.

Two distinct prongs are encompassed in the concept of legal cause in negligence: actual causation, and a more intangible legal policy element.[7] The "but for" test is the appropriate test for actual causation in the majority of circumstances. The "but for" test has been described as follows: "The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event if the event would have occurred without it." *Id.* § 41, at 266.

The legal policy prong of negligence causation questions "whether the conduct has been so significant and important a cause that the defendant should be legally responsible." *Id.* § 42, at 273.[8] A valid instruction on legal causation must include both this element and an actual cause element.

As a general rule, Alaska follows the "substantial factor test" of causation. *See Morris v. Farley Enter., Inc.*, 661 P.2d 167, 169 (Alaska 1983). Our "substantial factor test" is derived from the Restatement (Second) of Torts § 431 (1965), which states:

> The actor's negligent conduct is a legal cause of harm to another if
>
> (a) his conduct is a substantial factor in bringing about the harm, and
>
> (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

*Id.* at 428.

The Restatement's "substantial factor test" encompasses *both* the actual and legal prongs of legal causation. *See. id.* § 431 cmt. a (1965). Thus, depending on the issues and evidence presented at trial, a jury instruction on negligence applying this test may incorporate a "but for" test of actual causation.

We have recognized, however, that the "but for" test is not appropriate in instances where two or more forces are involved, and where each force by itself is sufficient to cause the injury. In such instances, the "but for" test should not be used, as it could result in "each force being absolved of liability." *Wilson v. City of Kotzebue*, 627 P.2d 623, 630 (Alaska 1981). As we explained in *State v. Abbott*, 498 P.2d 712 (Alaska 1972):

> Normally, in order to satisfy the substantial factor test it must be shown *both* that the accident would not have happened "but for" the defendant's negligence and that the negligent act was so important in bringing about the injury that reasonable men would regard it as a

---

7. "Legal cause" is also frequently referred to as "proximate cause." *See* Jeremiah Smith, *Legal Cause in Actions of Tort*, 25 Harv.L.Rev. 103, 106 (1911). Similarly, the "substantial factor test" of the Restatement of Torts (Second) § 431 is a test of legal causation encompassing both actual cause and policy considerations. *See* discussion *infra*.

8. Explained in other words, "If the force [the defendant] set in motion, has become, so to speak, merged in the general forces that surround us, [or has] 'exhausted itself' like a spent cartridge, it can be followed no further. Any later combination of circumstances to which it may contribute in some degree is too remote from the defendant to be chargeable to him." Smith, *supra*, at 112 (citations omitted).

cause and attach responsibility to it. There is, however, one significant exception to this concurrence requirement: if two forces are operating to cause the injury, one because of the defendant's negligence and the other not, and each force by itself is sufficient to cause the injury, then the defendant's negligence may be found to be a substantial factor in bringing about the harm.

. . . .

. . . As Dean Prosser states:

If two causes concur to bring about one event, and either one of them, operating alone, would have been sufficient to cause the identical result [then liability should be imposed].

*Id.* at 727 (quoting William L. Prosser, *Handbook of the Law of Torts* § 41, at 239 (4th ed. 1971)) (footnote omitted) (brackets in original).

In such a circumstance, where the trier of fact potentially could determine that independent concurrent causes were operating, the "but for" test clearly would be inappropriate.

## II. *WAS A CONCURRENT CAUSE INSTRUCTION WARRANTED?*

Vincent argues that the superior court erroneously instructed the jury on legal causation because the court used the "but for" causation test. Relying on *Yukon Equipment, Inc. v. Gordon,* 660 P.2d 428, 433 (Alaska 1983), *overruled on other grounds, Williford v. L.J. Carr Investments, Inc.,* 783 P.2d 235, 237 n. 4 (Alaska 1989), she submits that the "but for" test is inapplicable in the factual context of her case because she alleged negligent acts of several actors. By imposing the "but for" test, Vincent contends, the superior court prohibited the jury from considering her theory that a combination of negligent acts caused her injuries.

Vincent further argues that as a consequence of the court's combined "but for" and concurrent cause instruction, the jury was given inconsistent definitions of a con-

trolling legal rule. Vincent submits that the confusion created by this internally inconsistent instruction constitutes reversible error. In support of this contention Vincent points to other courts that have held specifically that the combination of a "but for" and a concurrent cause instruction is confusing and constitutes prejudicial error. *See Maupin v. Widling,* 192 Cal.App.3d 568, 237 Cal.Rptr. 521, 525–27 (1987); *Hart v. Browne,* 103 Cal.App.3d 947, 163 Cal. Rptr. 356, 363–64 (1980).[9]

FMH contends that since Vincent has alleged negligence only on the part of FMH and its agents, the "but for" test could not absolve the hospital of liability if the jury believed the negligence it found was a substantial factor in bringing about Vincent's injury. It argues that *Wilson v. City of Kotzebue,* 627 P.2d 623 (Alaska 1981), is controlling. In *Wilson,* we upheld the applicability of the "but for" test where the plaintiff had alleged several negligent acts by agents of one defendant, the City of Kotzebue. *Id.* at 630. Similarly, FMH submits, the "but for" test should govern here, where all the alleged negligent conduct was attributable to the hospital. It explains:

There was no other party or force acting upon Ms. Vincent other than the hospital to point the finger at. . . . [Another] force, whether it be a tortfeasor or act of God, is not present in this action.

In rebuttal, Vincent argues that FMH itself has contradicted its claim that only one force, if any, was involved in the injury. She observes that FMH introduced evidence and argued that Vincent's unique physiology was the true cause of her injury.

Had the evidence in the instant case been limited to alleged negligence by nurses and doctors employed by FMH, then under the logic of *Wilson,* a "but for" instruction would have been correct. FMH, the named defendant, would bear the legal responsibility for all such acts. *See id.*

9. We note that in *Mitchell v. Gonzales,* 54 Cal.3d 1041, 1 Cal.Rptr.2d 913, 819 P.2d 872 (1991), California completely rejected its "but for" causation instruction. *See id.* 819 P.2d at 876–79.

FMH, however, introduced evidence and argued that factors unique to Vincent's physiology were involved in her injury.[10] In light of this evidence of another force, Vincent's allegedly "extraordinary" physiology, our holding in *Wilson* dictates that a concurrent cause instruction was proper. *See Fussell v. St. Clair*, 120 Idaho 591, 594–95, 818 P.2d 295, 297–98 (1991) (holding that where plaintiff alleged that doctor's negligence was the sole cause of child's brain damage, and evidence submitted by doctor indicated that an occult (hidden) prolapsed umbilical cord was present, a concurrent cause instruction was appropriate); *Chambers v. Rush–Presbyterian–St. Luke's Medical Ctr.*, 155 Ill.App.3d 458, 108 Ill.Dec. 265, 508 N.E.2d 426, 431–32 (1987) (holding that it was not error to give concurrent cause instruction where defendants alleged that the patient's preexisting cancer could have caused his death absent a coma allegedly caused by defendants' negligence); *Scafidi v. Seiler*, 119 N.J. 93, 574 A.2d 398, 402 (1990) ("It is self-evident that in cases in which the defendant's negligence combines with a *preexistent* condition to cause an injury, the standard charge on proximate cause could confuse or mislead a jury.").

### III. WAS THE SUPERIOR COURT'S CAUSATION INSTRUCTION RE-VERSIBLE ERROR?

Although we view the question as close, we conclude that the superior court's legal causation instruction does not constitute reversible error.[11]

The superior court was obligated to instruct the jury in a manner sufficiently broad to permit either a finding of concurrent causes, in which event the "but for" test would be inapplicable, or a finding of sole legal causation, in which circumstance a "but for" causation test would be appropriate. Thus, the superior court did not err in including the "but for" test in its causation instruction.

The questioned causation instruction did not preclude Vincent from arguing to the jury her theory of combined negligence on the part of FMH's agents and employees.[12] In this regard Vincent's counsel argued, as part of his final argument, that

[i]t may, in fact, be a combination of acts which lead up to a horrible injury, a combination of safety violations.... It may not just have been one mistake on the part of the Fairbanks Memorial Hospital nurses and doctors, it may not have been just one safety violation; it may have been several and each one acted as a building block with the next. And, as those safety violations mounted up, Elaine Vincent's health and her ability to live a normal life was placed at more and more risk.

On the other hand FMH's counsel never argued that even if some act of negligence on the part of FMH was otherwise sufficient to cause Vincent's heart attack, such negligence was not the legal cause because the heart attack was going to happen anyway. What counsel for FMH did argue was that the alleged acts of negligence in failing to monitor vital signs were irrelevant because just before the doctor

10. Additionally, Vincent herself introduced evidence of the expert panel's conclusion that she suffered from severe acidosis.

11. In *Poulin v. Zartman,* 542 P.2d 251 (Alaska 1975), we said that the test of "harmless error" is a subtle one. *Id.* at 261. The standard requires that the court put itself as nearly as possible in the position of the jurors to determine whether " 'as reasonable men, the error committed probably affected their verdict.' " *Love v. State,* 457 P.2d 622, 631 n. 15 (Alaska 1969) (quoting *State v. Dutton,* 83 Ariz. 193, 318 P.2d 667, 671 (1957)); *see also Alaska Pac. Assurance Co. v. Collins,* 794 P.2d 936, 947 (Alaska 1990). The fundamental test of the courts is to determine whether substantial rights of the parties were affected or the error had substantial influence. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *Love,* 457 P.2d at 631. In addition, Alaska Civil Rule 61 requires this court at every stage of the trial proceedings to "disregard *any error or defect* in the proceedings *which does not affect the substantial rights* of the parties." Alaska R.Civ.P. 61 (emphasis added).

12. *See Coney v. State,* 699 P.2d 899, 905 (Alaska App.1985) (disapproving a specific jury instruction, but finding harmless error where instructions taken as a whole clearly stated proper standard).

administered Mepergan he knew the patient's vital signs. The administration of Mepergan was appropriate, and the patient had a highly unusual allergic reaction to the drug which could not reasonably have been expected. Of particular significance is the fact that the superior court's legal cause instruction permitted the jury to consider the combined negligence of various health care providers and specifically informed them that legal responsibility could not be avoided merely because some other cause or force of nature caused or helped cause the injury or damage.[13]

Further, the causation instruction given by the superior court closely paralleled Alaska Civil Pattern Jury Instructions (CPJI) 3.06 and 3.07.[14] The court, however, omitted Instruction 3.06's bracketed text, which described the exception to the "but for" rule warranted by the existence of concurrent causes. We conclude, however, that the absence of the bracketed bridge text was harmless error in the context of this record, since the omission probably did not affect the jury's verdict. Here again we emphasize that the concurrent causation approach was not argued by FMH's counsel nor was Vincent precluded from presenting to the jury her theories of liability.

In conclusion we hold that any error in the superior court's legal cause instruction

was harmless error in the circumstances of this case.

**AFFIRMED.**

MOORE, J., not participating.

BURKE, Justice, dissenting.

I respectfully dissent. I am unable to agree that the error in the trial court's instructions to the jury was harmless.

---

**13.** We reject Vincent's argument that the internal structure of the superior court's legal cause instruction required the jury to first resolve the legal cause issue by use of the "but for" test. A reasonable reading of the instruction fails to support Vincent's structural analysis.

**14.** CPJI 3.06 states:
A legal cause of harm is an act or failure to act which is a substantial factor in bringing about the harm. An act or failure to act is a substantial factor in bringing about harm if it is more likely than not true that:
1. the act or failure to act was so important in bringing about the harm that a reasonable person would regard it as a cause and attach responsibility for it; and
2. the harm would not have occurred but for the act or failure to act.
[There is, however, one exception to the requirement that the harm would not have occurred but for the act, or failure to act, or

[sic] the defendant. If two forces operated to cause the harm, one because of the defendant and the other not, and each force by itself was sufficient to cause the harm, then the defendant's act or failure to act is a cause of the harm if it was so important in bringing about the harm that a reasonable person would regard it as a cause and attach responsibility to it.]
CPJI 3.07 states in relevant part:
There may be more than one legal cause of harm. A person's negligence may combine with another cause (either the acts of another person or some force of nature) to produce harm. If you find a person's negligence is a legal cause of harm, that person may not avoid legal responsibility merely because some other cause also caused or helped cause the harm.