458

VELMA CHAMBERS, Indiv. and as Special Adm'r of the Estate of the Honorable Lawrence Chambers, Judge of the Circuit Court of Cook County, Deceased, Plaintiff-Appellee, v. RUSH-PRESBYTERIAN-ST. LUKE'S MEDICAL CENTER *et al.*, Defendants-Appellants.

First District (5th Division) No. 86—208

Opinion filed May 8, 1987.

Harold L. Jacobson and Hugh C. Griffin, of Chicago (Lord, Bissell & Brook, of counsel), for appellants.

William D. Maddux and Steven K. Jambois, of Chicago (William D. Maddux & Associates, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

This appeal arises from actions for survival and wrongful death brought by the plaintiff, Velma Chambers, who is the widow of decedent, Lawrence Chambers. The trial court directed a finding of negligence against defendants, Rush-Presbyterian-St. Luke's Medical Center and Dr. Donald Jensen. This finding is not contested. The issues of proximate cause and damages were submitted to a jury, which returned verdicts for plaintiff in the amount of $800,000 for the survival action and $1,500,000 on the wrongful death count. The trial court denied defendants' motion for judgment notwithstanding the verdict and all of their post-trial motions except one that reduced the judgment by $59,150 pursuant to section 2—1205 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1205).

Defendants appeal on the grounds that: (1) the trial court erred in not directing a verdict notwithstanding the verdict against plaintiff on her wrongful death cause since she failed to sustain her burden of proving proximate cause as required by Illinois law; (2) in the alternative, the jury was erroneously instructed on the proximate cause issue; and (3) the damage awards on both the survival and wrongful death counts were excessive, and the trial court committed evidentiary error on the damages issue.

The facts underlying this appeal are as follows. In July 1980, plaintiff's decedent, Lawrence Chambers, aged 53 and an associate judge of the Cook County circuit court, visited his physician, Dr. Baldwin, complaining of abdominal pains after allegedly indulging in heavy alcohol drinking over the Fourth of July weekend. However, the record supports plaintiff's assertion that Judge Chambers was not an alcoholic. The judge had previously been treated by Dr. Baldwin for pancreatitis, hypertension, high blood pressure, and gout. Dr. Baldwin

suspected liver problems and, since he was going on vacation, referred decedent to defendant, Dr. Jensen, a gastroenterologist specializing in liver disease and an employee of defendant Rush-Presbyterian-St. Luke's Medical Center (Rush). Dr. Jensen first examined decedent on July 30, 1980, and admitted him to Rush the next day for testing.

After tests, it appeared that decedent had a partial obstruction of the common bile duct. The obstruction seemed to be two to three millimeters (3/40th of an inch) above the ampulla (the area where the common bile duct meets the pancreatic duct). The X rays showed a normal ampulla. An ultrasound test did not disclose any evidence of a mass in the pancreas nor any dilation of the biliary ducts. Dr. Jensen believed the blockage to be caused either by cancer or chronic pancreatitis. He testified that, at that time, the obstruction was not total since material was still getting through the ducts. Dr. Jensen then decided to take decedent off food by mouth in order to give the pancreas a rest. Decedent was placed on hyperalimentation, i.e., intravenous feeding, on the evening of August 12. On August 11, decedent's blood sugar level was 449, a near-dangerous level. Dr. Jensen stated that he was unaware of this and would have ordered insulin for decedent if he had known of the high level.

On August 13, the staff at Rush noted that decedent had become lethargic. On August 14, decedent's blood sugar had risen to 1104 and he went into a hyperosmolar nonketotic coma caused by the high blood sugar. Testimony of Dr. Jensen and expert witnesses established that good medical practice requires a doctor to frequently monitor patients receiving hyperalimentation. Dr. Jensen admitted deviation from this practice. As a result of the coma, decedent suffered permanent brain damage and received no treatment for a cancer revealed by an autopsy performed after his death four months later.

There was conflicting medical testimony as to the cause of death and the original location of the cancer. The autopsy report, prepared by pathologist Dr. Edmund V. Pellettier, recorded that there was no cancer in the liver or lymph nodes, i.e., it had not yet metastasized at the time of death. It was also noted that the cancer originated in the common bile duct but had later extended into the head of the pancreas by December. Dr. Pellettier testified at trial and changed his conclusions based upon a 1985 reevaluation done three weeks before trial. He testified that there were cancer cells in the duodenum and lymph glands and that the cancer probably originated near the head of the pancreas, not in the common bile duct. Survival rates for cancers in this general area are affected by where a cancer originates and how far it has spread before treatment.

Plaintiff's expert, Dr. Patrick Sullivan, disagreed with the pathologist's conclusions as set forth in Dr. Pellettier's testimony. Dr. Sullivan believed that decedent's death was attributable partially to the severe brain injury and partially to the untreated cancer. He stated that early detection of decedent's type of cancer significantly affects the chances of survival. He further stated that the smaller the tumor when detected, the greater the chance for survival and that overall survival rates in this area—for both large and small tumors—is approximately 33%. The doctor estimated that this type of tumor, untreated, could double in size in 50 to 120 days. Dr. Sullivan also testified that the August test results showed the tumor to be located in the common bile duct near the ampulla and that the closer a tumor is to the ampulla, the greater the chance of survival. He also indicated that in his opinion, decedent had a good chance for cure and a normal life expectancy when he entered the hospital in August, but that decedent's chance of survival was zero if this type of tumor was untreated.

Defendants' expert, Dr. Harvey Golomb, testified that pancreatic cancer, not the coma, caused decedent's death and that, absent the coma, decedent had only a 33% chance of surviving. Dr. Golomb based his opinion, in part, on the pathologist's testimony. However, he noted that the August tests revealed no pancreatic cancer. Another defendant expert, Dr. Robert Freeark, was also of the opinion that decedent's cancer originated in the pancreas and, as a result, decedent's life expectancy without the coma would have been approximately six months.

Defendants first contend that their motion for a judgment notwithstanding the verdict on the wrongful death count should have been granted because the evidence did not show that, absent the negligently induced coma, decedent would more likely than not have survived his cancer, which was not caused by defendants. Regarding the issue of proximate cause, defendants argue, with some authority, that since plaintiff's medical expert testified that the overall survival rate for cancers of the type decedent had was 33%, which cancer preceded defendants' negligent treatment, it was more probable than not that decedent's death would have occurred irrespective of their negligent treatment. Thus, they assert that as a matter of law, the negligent treatment was not the proximate cause of decedent's death. According to defendants, Illinois law requires a plaintiff to affirmatively show that a defendant's negligence was the proximate cause of the injury and, where plaintiff does not show that there was a more than 50% chance of survival, that burden of proof is not met.

■ The law in Illinois requires a plaintiff to show that defendant's negligence proximately caused the injury complained of; in other words, it is more probably true than not that the negligence proximately caused the injury. (*Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 424, 328 N.E.2d 301.) It has been stated that this standard does not mean that a plaintiff must prove that a better result would have been achieved absent the malpractice, but only that the proximate cause relationship between the negligence and the injury must be shown by a preponderance of the evidence. (*Wise v. St. Mary's Hospital* (1978), 64 Ill. App. 3d 587, 589-90, 381 N.E.2d 809.) A problem arises regarding this standard of proof in cases where there is evidence both of medical malpractice and an underlying disease or injury, as in the present case. It is defendants' contention that this proximate cause burden of proof was not met since plaintiff did not show that decedent had a more than 50% chance of surviving the cancer; they argue that plaintiff's theory supporting proximate cause is based on the "lost chance of survival" rule. See, *e.g., Hicks v. United States* (4th Cir. 1966), 368 F.2d 626 (substantial possibility of survival); *Jeanes v. Milner* (8th Cir. 1970), 428 F.2d 598; *Thomas v. Corso* (1972), 265 Md. 84, 288 A.2d 379.

Defendants rely on a recent fourth appellate district case, *Curry v. Summer* (1985), 136 Ill. App. 3d 468, 483 N.E.2d 711, *appeal denied* (1986), 111 Ill. 2d 566, for their argument that plaintiff's failure to show a more than 50% chance of recovery from cancer was a failure to show proximate cause. However, in *Curry*, none of the medical experts testified that the defendant's negligence proximately caused the death. Absent this vital link, plaintiff argued on a decreased chance of survival theory. In *dicta*, the court responded to this argument by stating that plaintiff needed to show that the decedent had a better than even chance of survival in order to establish proximate cause. (136 Ill. App. 3d 468, 472, 483 N.E.2d 711.) Defendants also called our attention to a third district case, *Russell v. Subbiah* (1986), 149 Ill. App. 3d 268, in which it was held that evidence showing there was a 50/50 chance that a doctor's negligence contributed to plaintiff's prolonged recovery was insufficient to sustain the burden of proof as to proximate cause. 149 Ill. App. 3d 268, 272.

■ We first note that, in our case, plaintiff has nowhere presented a lost chance of survival argument. Furthermore, we do not believe that the holdings in these two cases accurately reflect the case law in Illinois on proximate cause, as expressed by our supreme court in *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 424, 328 N.E.2d 301, in which it was stated that it need not be shown that a better

result would have occurred if proper treatment had been given. We prefer to follow the reasoning applied by the court in *Northern Trust Co. v. Louis A. Weiss Memorial Hospital* (1986), 143 Ill. App. 3d 479, 493 N.E.2d 6, *appeal denied* (1986), 112 Ill. 2d 579. In that case, the court adopted section 323 of the Second Restatement of Torts as being applicable to medical malpractice cases. Section 323 provides that:

> "One who undertakes \*\*\* to render services to another which he should recognize as necessary for the protection of the other's person \*\*\* is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm \*\*\*." Restatement (Second) of Torts sec. 323, at 135 (1965).

In applying section 323, the court in *Northern Trust* cited *Hamil v. Bashline* (1978), 481 Pa. 256, 269, 392 A.2d 1280, 1286, for the proposition that once it has been shown that a defendant's negligence increased the risk of harm to plaintiff, and that the harm was actually sustained, it then becomes a jury question as to whether the increased risk was a substantial factor in producing the harm. (*Northern Trust Co. v. Louis A. Weiss Memorial Hospital* (1986), 143 Ill. App. 3d 479, 487, 493 N.E.2d 6, *appeal denied* (1986), 112 Ill. 2d 579.) We must note here that although this standard is well established in Pennsylvania, its application has been narrowly restricted to malpractice cases wherein direct proof of causation is unavailable. See Note, *Increased Risk of Harm: A New Standard for Sufficiency of Evidence of Causation in Medical Malpractice Cases*, 65 B.U.L. Rev. 275, 287-88 (1985).

In its application of section 323, the *Northern Trust* court stated that "the better rule is that '[e]vidence which shows to a reasonable certainty that negligent delay in diagnosis or treatment \*\*\* lessened the effectiveness of treatment is sufficient to establish proximate cause.' " (*Northern Trust Co. v. Louis A. Weiss Memorial Hospital* (1986), 143 Ill. App. 3d 479, 487, 493 N.E.2d 6, 12, *appeal denied* (1986), 112 Ill. 2d 579, citing *James v. United States* (N.D. Cal. 1980), 483 F. Supp. 581, 585.) Applying this type of analysis to the present case, it is clear that defendants' negligence, which caused decedent to become comatose, increased the risk of harm since his underlying cancer remained undiagnosed and untreated as a result of that coma. In other words, the negligently induced coma was a substantial factor in causing decedent's death.

Even if we rejected the appropriateness of applying section 323 to malpractice cases such as the present case, and we do not, the

evidence in this record is sufficient to support a finding that more probably than not, defendants' negligence proximately caused decedent's death. The Illinois Wrongful Death Act provides that an action shall lie "[w]henever the death of a person shall be caused by *** neglect" which would "if death had not ensued, have entitled the party injured to maintain an action and recover damages." (Ill. Rev. Stat. 1985, ch. 70, par. 1.) The Act does not limit such actions to healthy persons or persons with a better than 50% chance of survival. Thus, the crucial issue in a wrongful death action is whether defendant's negligence was a proximate cause of decedent's death, and the question of proximate cause is one for the jury. *Shanowat v. Checker Taxi Co.* (1964), 48 Ill. App. 2d 81, 88-89, 198 N.E.2d 573.

 █ It is fundamental law that in negligence cases, there may be more than one proximate cause of injury and that one is liable for its negligent conduct whether it contributed in whole or in part to the injury as long as proximate cause exists. (*Ray v. Cock Robin, Inc.* (1974), 57 Ill. 2d 19, 23, 310 N.E.2d 9.) It is also well established that the existence of proximate cause is a question for the jury or factfinder. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 84, 117 N.E.2d 74.) Issues which are sufficient to allow reasonable persons to arrive at different results should never be determined as matters of law. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 83, 117 N.E.2d 74.) Whether a person would have had a 33% or 66% or 100% chance to survive but for the negligence of another is a question of fact properly determined by a jury. In the present case, the conflicting opinions of the medical experts created a factual situation from which reasonable persons could draw differing conclusions. Therefore, the issue of proximate cause was properly before the jury.

 Accordingly, the trial court was correct in denying defendants' motion for judgment notwithstanding the verdict. Such a verdict should be entered only when all the evidence, viewed most favorably to the opponent, overwhelmingly favors the movant so that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) This rule applies to medical malpractice cases in the same manner as to other civil litigation. (*McMillen v. Carlinville Area Hospital* (1983), 114 Ill. App. 3d 732, 737, 450 N.E.2d 5.) Viewing the evidence in the light most favorable to plaintiff, it does not so overwhelmingly favor defendants that a verdict for plaintiff cannot stand.

 The jury was instructed to consider all the evidence in deciding whether plaintiff's wrongful death contention was more probably true than not true. In this case, as in many medical malpractice cases,

the medical experts disagreed as to whether the coma or the cancer proximately caused decedent's death, thus creating a question of fact. The experts also had conflicting opinions as to decedent's chance of survival, absent the coma, and disagreed as to where the tumor originated, which would affect his chance of survival. However, plaintiff's expert, Dr. Sullivan, testified that defendants' negligence was a proximate cause of decedent's death; *i.e.*, death was partially due to brain damage secondary to the coma and partially to liver disease resulting from the cancer untreated because of that coma. Dr. Sullivan also believed that, if decedent's cancer had been treated in August, he would have had a good chance of recovering to live a normal life span. Additionally, the jury heard the trial testimony of the pathologist which contrasted sharply with the report he had prepared immediately after decedent's death in 1980. It appears that the original report supported some of Dr. Sullivan's conclusions regarding the location and size of the tumor before the coma. It is the jury alone which must determine the weight of the evidence and credibility of the witnesses on controverted questions of fact, and a reviewing court will not set aside the jury's verdict unless it is indisputable that a wrong conclusion was reached. (*Boey v. Quaas* (1986), 139 Ill. App. 3d 1066, 1073, 487 N.E.2d 1222.) Based on the evidence presented in this case, it is clear the facts were susceptible to differing inferences, and we cannot say that the jury's conclusion was against the manifest weight of the evidence. For these reasons, the trial court properly denied defendants' motion for judgment notwithstanding the verdict.

■ Defendants' alternative argument, that the long form proximate cause instruction given to the jury deprived them of a fair trial, is without merit. They object to the inclusion of the following sentences in the instruction: "It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury." (Illinois Pattern Jury Instruction, Civil, No. 15.01 (2d ed. 1971) (hereinafter IPI Civil 2d).) Defendants argue that this instruction should not have been given because of decedent's preexisting cancer, which could have caused his death absent the coma. They assert that the long form confused and misled the jury and gravely prejudiced their theory of defense that decedent more probably than not had incurable cancer before the coma. The comment to this instruction notes that it is appropriate to use the two sentences quoted above where there is evidence that something or the acts of a person other than defendant proximately caused the injury. IPI Civil 2d No. 15.01, Comment, at 93-94.

Each party is entitled to instructions on matters supported by the evidence. (*Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 485, 473 N.E.2d 1372.) Plaintiff's evidence indicated that decedent's chance of survival was negated by the coma and subsequent failure to treat the cancer. In fact, Dr. Sullivan testified that both the coma and the untreated cancer concurred to cause decedent's death. Furthermore, defendants' defense theory that something other than their negligence (*i.e.*, cancer) caused the death makes the use of the long form instruction appropriate according to the accompanying comment.

The recent case of *Casey v. Baseden* (1986), 111 Ill. 2d 341, 490 N.E.2d 4, is applicable by analogy to the present issue. In *Casey*, a jury entered a verdict in a negligence case in favor of plaintiff, apportioning her contributory negligence at 30%. It was argued that the long form proximate cause instruction should not have been given when only defendant and plaintiff were involved in the accident because the instruction could have confused and misled the jury into believing third parties contributed to the negligence, thus causing an erroneous reduction of plaintiff's percentage of fault. The *Casey* court acknowledged that some courts have so held (see, *e.g., Lounsbury v. Yorro* (1984), 124 Ill. App. 3d 745, 464 N.E.2d 866), but affirmed the trial court's use of the long form where the instructions viewed in their entirety fully and fairly apprised the jury of the relevant principles. (*Casey v. Baseden* (1986), 111 Ill. 2d 341, 349, 490 N.E.2d 4.) Considering all of the instructions, in addition to the evidence in this case indicating that the coma, caused by defendants' negligence, and the cancer were concurrent causes of death, it was not error for the trial court to give the long form instruction.

██ ██ Defendants' final argument concerns the alleged excessiveness of both damage awards and the exclusion of evidence that decedent had been treated for two episodes of an unrelated disease. The jury awarded $800,000 on the four-month survival action. Defendants contend that this was excessive based on decedent's lost earnings of $16,000 and medical expenses of $126,237 and where there was evidence that decedent suffered no conscious pain during the coma. They claim that, even if there had been pain and suffering, the excessive award must have resulted from jury confusion as to the difference in damages for counts I and II.

Damages are peculiarly one of fact for a jury and courts are reluctant to interfere with the jury's exercise of its discretion in this area. (*Mileur v. Briggerman* (1982), 110 Ill. App. 3d 721, 726, 442 N.E.2d 1356.) Appellate courts have reversed a jury's determination of damages when they are excessive. However, the term "excessive" has

never clearly been defined; it has merely been described. It has been stated that a reviewing court will not disturb a jury's award of damages unless obviously the result of passion or prejudice. (*Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 359, 484 N.E.2d 582.) And, an award is not excessive unless it falls outside the necessary limits of fair and reasonable compensation or it shocks the judicial conscience. (137 Ill. App. 3d 352, 359, 484 N.E.2d 582.) Additionally, a jury's award will not be subject to remittitur where it falls within the flexible range of conclusions which can be reasonably supported by the facts. (*Guerrero v. City of Chicago* (1983), 117 Ill. App. 3d 348, 352, 453 N.E.2d 767.) No evidence has been presented to indicate confusion on the part of the jury. Furthermore, there are facts in the record that can be said to support the award for decedent's four-month coma. We therefore conclude that the survival award is not excessive.

The court must also affirm the jury's award of $1,500,000 on the wrongful death count. The only basis of error suggested by defendants is the trial court's granting of a motion *in limine* with respect to decedent having been treated for two episodes of an unrelated disease in 1976 and in 1979. The trial court exercised its discretion in granting plaintiff's motion because the probative value of the evidence was outweighed by its prejudicial effect. No offer of proof was made and there was no evidence that the disease contributed to decedent's death or affected his relationships with his wife, children, or grandchild. Plaintiff introduced evidence that a man of decedent's age (53) could have expected to live 20.7 years beyond the date of his death. Although his salary as an associate judge was $45,000 a year when he died, it would have increased to $68,500 by the time of the trial. The asserted misbehavior of decedent was not shown to have affected his familial relationships and was too remote and speculative. As a result, the prejudicial effect of the information sought to be introduced far outweighed any valid evidentiary inferences. (*Anthony v. New York Central R.R.* (1965), 61 Ill. App. 2d 466, 473-74, 209 N.E.2d 686.) Accordingly, the wrongful death damage award is affirmed.

For the above reasons, we affirm the trial court on both counts.

Affirmed.

LORENZ and PINCHAM, JJ., concur.