MARGARET HARE, Personal Representative of the Estate of John Hare, Deceased, Plaintiff-Appellant, v. FOSTER G. McGAW HOSPITAL *et al.,* Defendants (Andrew Labrador, Defendant-Appellee).

First District (4th Division)   No. 1—88—1933

Opinion filed December 28, 1989.

Michael R. Panter, of Michael R. Panter & Associates, of Chicago, for appellant.

Brian T. Henry, of Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Robert J. Franco, of counsel), for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

This appeal arises from actions for survival and wrongful death brought by the plaintiff, Margaret Hare, mother of the decedent John Hare, against Dr. Andrew Labrador, an emergency room physician. The complaint alleged that the defendant's failure to discover the severity of the decedent's hepatitis and to hospitalize him was a cause of his death. In a jury trial, the trial court directed a verdict in favor of the defendant and against the plaintiff on the wrongful death count on the basis that the plaintiff failed to produce evidence showing that the alleged malpractice proximately caused the decedent's death. The plaintiff then voluntarily dismissed the survival count with prejudice and initiated this appeal. The plaintiff contends on appeal that the trial court erred in directing a verdict in favor of the defendant on the issue of proximate cause where evidence was produced to show that the defendant's negligent failure to hospitalize the decedent denied him a significant chance to survive his illness. This appeal involves issues of proximate cause and the emerging doctrine of "lost chance" or increased risk of harm.

On August 27, 1980, 22-year-old John Hare went to the emergency room at the Loyola University Medical Center (Loyola) and was diagnosed as having hepatitis B. He was told to rest and to follow up at the Hepatitis Clinic within one week. Hare decided to convalesce at his girlfriend's house in Calumet City, Illinois.

On September 9, 1980, Hare went to the emergency room at St. Margaret Hospital in Hammond, Indiana, complaining of abdominal cramping. He stated that he had been diagnosed as having hepatitis B and that he wanted an enzyme test. The triage nurse recorded that Hare was "very jaundiced," then directed him to the defendant, who took a medical history and examined Hare. The defendant reported that Hare was jaundiced and that his liver was enlarged and mildly tender but smooth and firm. Hare was alert and did not look weak. The defendant discussed Hare's condition with him and advised him to continue rest and to maintain a high-protein, high-carbohydrate, low-fat diet. He also advised him to follow up at Loyola. Hare was not given any tests.

Five days later, on September 14, 1980, Hare was brought to the emergency room at St. Margaret, given blood tests and immediately admitted to the hospital. He had developed fulminant hepatitis, a severe form of hepatitis characterized by mental confusion. Hare went into a deep coma and died on September 23, 1980, of hepatic encephalopathy, a swelling or edema of the brain which is an untreatable com-

plication of fulminant hepatitis.

At trial, the plaintiff presented expert testimony by Dr. Jonathan Alexander, who testified that the defendant breached the duty of care by failing to order a pro-thrombine time (PT) test and by failing to communicate to Hare the immediacy of his need for specialized care. Alexander stated that although Hare did not have fulminant hepatitis when treated by the defendant on September 9, a PT test would have shown that the impairment of his liver function was severe enough to require hospitalization. According to Dr. Alexander, there is no cure for hepatitis. However, it is necessary to hospitalize patients with severe hepatitis in order to give them supportive care, such as bed rest and appropriate diet to keep them in the best condition possible to fight the disease. Hospitalization also enables the early detection and treatment of certain complications which arise from hepatitis. Dr. Alexander then testified as follows:

"Certainly the reason why doctors admit patients to the hospital who have severe hepatitis is because this general [supportive] care that I have just been talking about certainly is a benefit to the patient, and does increase the patient's chance of surviving [his] illness.

* * *

The consequences of failing to provide the standard of care for John Hare on 9/9, the failure to admit him on 9/9 was that, in my opinion, he was essentially denied any reasonable opportunity to benefit from medical intervention. He was denied a reasonable opportunity to benefit from whatever the world of medicine could give him to help stabilize him and make him the [sic] as strong as possible in his battle against the liver disease that he had."

Dr. Alexander further testified that the defendant's failure to hospitalize Hare "doomed him to death" and "denied him a significant chance to survive his illness." He stated, however, that there is no known method of detecting hepatic encephalopathy, no cure for the disease, and no way of preventing it other than general supportive care. Although most hepatitis patients do not need to be hospitalized, fulminant hepatitis is a potentially fatal disease with a 20% rate of survival.

The defendant presented the testimony of two medical experts, Dr. Andrew Matthews and Dr. John Payne, who testified that based on the medical records, Hare did not have fulminant hepatitis on September 9, 1980. They also stated that a PT test would not indicate fulminant hepatitis in a patient and that there is no cure for fulmi-

nant hepatitis. Dr. Matthews testified that hospitalization increases a patient's chances of surviving fulminant hepatitis because "[t]here are people there that are there to prevent certain complications, to treat certain complications." Dr. Payne testified that in 1980, it was believed that patients with fulminant hepatitis should be hospitalized to increase their chances for survival. He further testified, however, that hospitalization would only make a difference "if you find a treatable complication such as bleeding or infection. And in 1980 if the cause of death was cerebral edema it didn't make any difference where the patient was" in terms of increasing his chance for survival.

The issue on appeal is whether the trial court properly directed a verdict in favor of the defendant on the grounds that the plaintiff failed to produce sufficient evidence from which the jury could find that the defendant's alleged malpractice was a proximate cause of John Hare's death.

■■ A verdict is properly directed in favor of a defendant when all of the evidence, viewed in an aspect most favorable to the plaintiff, so overwhelmingly favors the defendant that no contrary verdict based on that evidence could stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) A directed verdict properly prevents the jury from engaging in "mere speculation, guess or conjecture." *Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506, 508, 418 N.E.2d 503, 505.

■■ ■ This cause is a wrongful death action based upon the alleged medical malpractice of the defendant, Dr. Labrador. In order to recover for wrongful death, the Wrongful Death Act requires the plaintiff to prove that the alleged negligence caused the death of the decedent. (Ill. Rev. Stat. 1987, ch. 70, par. 1.) The Illinois Supreme Court has stated that to prove causation in a medical malpractice action, the plaintiff must establish that it is more probably true than not true that the negligence was a proximate cause of the injury. (*Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 424, 328 N.E.2d 301.) To prove proximate cause, the plaintiff must establish that the defendant's negligence was a cause in fact of the death. (W. Keeton, Prosser & Keeton on Torts §41, at 265-66 (5th ed. 1984).) If the death would have occurred even in the absence of negligence, the negligence was not a cause in fact of the death. The element of cause in fact need not be proved to a certainty. Rather, the evidence is sufficient if it affords the jury a reasonable basis to conclude that the negligence was "probably" or "more likely than not" a cause of the death. (W. Keeton, Prosser & Keeton on Torts §41, at 269 (5th ed. 1984); Comment, *Proving Causation in "Loss of A Chance" Cases: A Proportional Ap-*

*proach*, 34 Cath. U.L. Rev. 747, 749 (1985).) Thus, the plaintiff in this action was required to prove that it was more probably true than not that Dr. Labrador's failure to hospitalize Hare was a cause of his death.

Tested by this standard, the evidence of proximate cause was clearly insufficient to submit to the jury. Dr. Alexander, the plaintiff's expert, did not testify that the failure to hospitalize Hare on September 9 caused his death. He did state the opinion that the failure to hospitalize denied Hare a significant chance to survive his illness and "doomed him to death." However, he further testified that there is no cure for hepatitis and that hospitalization is usually not necessary. He also stated that fulminant or severe hepatitis is a form of the disease which is highly fatal and that standard medical practice requires hospitalization in cases of fulminant hepatitis for the purpose of providing the patient with general supportive care. Such supportive care helps the patient by facilitating the early detection and treatment of treatable complications arising from the hepatitis and by giving the patient the proper rest and diet to best condition his body to fight the disease. The uncontroverted evidence shows that John Hare died of hepatic encephalopathy, a complication of hepatitis that cannot be detected before it occurs and cannot be cured. Thus, the only evidence supporting Dr. Alexander's opinion was his testimony that general supportive care such as rest and proper diet would have helped keep Hare in the best possible condition to fight the disease. A finding that the defendant's failure to hospitalize Hare was more probably than not a cause of his death based solely on this testimony would necessarily amount to nothing more than mere speculation. Therefore, under the existing standard of probable cause as stated in *Borowski*, the trial court properly directed a verdict in favor of the defendant.

It has been recognized that there are problems in applying the existing "more probable than not" standard of proximate cause to cases in which the patient had a change of a better result absent malpractice, but the malpractice deprived the patient of that result or increased the risk of an unfavorable outcome. (See Note, *Increased Risk of Harm: A New Standard for Sufficiency of Evidence of Causation in Medical Malpractice Cases*, 65 B.U.L. Rev. 275 (1985); Comment, *Proving Causation in "Loss of A Chance" Cases: A Proportional Approach*, 34 Cath. U.L. Rev. 747 (1985); Wolfstone & Wolfstone, *Recovery of Damages for the Loss of a Chance*, 1982 Med. Trial Tech. Q. 121.) For example, to satisfy the existing standard of proof, the plaintiff in a wrongful death case must show that the patient would more probably than not have survived if he had been treated properly. If

the patient would probably have died from the underlying illness, then it was the illness and not the doctor's malpractice which caused the death. Therefore, a patient whose doctor's malpractice deprived him of a 49% chance of surviving his illness would be denied recovery of the basis that it was more probable than not that he died from the illness. On the other hand, a patient deprived by malpractice of a 51% chance of survival would recover the full extent of damages for the death because it was more probable than not that the malpractice caused the death.

These perceived inequitable results gave rise to a line of cases, known as "lost chance" cases, which have attempted to correct the problem by altering the proof requirements on causation in cases where negligence deprived the plaintiff of a better result or increased the risk of an unfavorable outcome. (See, *e.g.*, *Hamil v. Bashline* (1978), 481 Pa. 256, 392 A.2d 1280; *Thompson v. Sun City Community Hospital, Inc.* (1984), 141 Ariz. 597, 688 P.2d 605; *Herskovits v. Group Health Cooperative* (1983), 99 Wash. 2d 609, 664 P.2d 474.) In the most frequently cited of these cases, *Hamil v. Bashline*, the Pennsylvania Supreme Court held that once it has been shown that the defendant's negligence increased the risk of harm to the plaintiff and that the harm was actually sustained, it then becomes a jury question as to whether the increased risk was a substantial factor in producing the harm. The rationale for this holding was provided by section 323 of the Restatement (Second) of Torts, which states:

> "One who undertakes *** to render services to another which he should recognize as necessary for the protection of the other's person *** is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

> (a) his failure to exercise such care increases the risk of such harm." (Restatement (Second) of Torts §323(a), at 135 (1965).)

The *Bashline* case involved a situation in which the plaintiff's expert testified that negligent treatment of the decedent deprived him of a 75% chance of surviving a heart attack. No one would testify, however, that to a reasonable degree of medical certainty the negligence caused the death. Under the holding in *Bashline*, the jury was allowed to find that the increased risk caused by the doctor's negligence was a substantial factor in causing the death.

Subsequent cases applying *Bashline*'s lost chance analysis have shown that it is not without problems of its own. For example, in *Herskovits v. Group Health Cooperative* (1983), 99 Wash. 2d 609, 664

P.2d 474, an expert testified that the defendant's negligent delay in diagnosing the decedent's lung cancer decreased the patient's chance of surviving the cancer from 39% to 25%. The court held that the jury could find that this 14% reduction in the chance of survival proximately caused the death. Applying the *Bashline* reasoning, the court stated that once the plaintiff introduced evidence that the defendant's negligence increased the risk of harm, the jury could "go further and find that such increased risk was in turn a substantial factor in bringing about the resultant harm." (*Herskovits*, 99 Wash. 2d at 617, 664 P.2d at 478.) If the jury made such a finding, the plaintiff would be entitled to the full amount of damages for the death. In contrast to the traditional "more likely than not" requirement of proving causation, which would deny recovery to a patient with a less than 50% chance of survival, the *Bashline* approach as exemplified in *Herskovits* would allow a full recovery for the decedent's death on a showing of any increase in the risk of harm, no matter how slight. One commentator has criticized *Herskovits* as bringing to life the fears raised by the *Bashline* approach, because a finding that a 14% reduction in the chance of survival constituted a substantial factor in producing the death can be nothing more than the product of pure speculation. 34 Cath. U.L. Rev. at 775.

Certain commentators have suggested that the solution to the "all or nothing" results in medical malpractice cases where there is evidence of both negligence and an underlying illness is to recognize a separate cause of action for the loss of a chance to survive. (34 Cath. U.L. Rev. 747; King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 Yale L.J. 1353 (1981); *Herskovits*, 99 Wash. 2d at 633, 664 P.2d at 486 (Pearson, J., concurring).) Rather than altering the burden of proof with respect to causation, the injury would be redefined as the "loss of a chance" and the relevant inquiry would be whether the defendant "probably" caused a reduction in the patient's chance of survival. If causation were proved, compensation would be awarded in direct proportion to the extent of the loss of chance. 34 Cath. U.L. Rev. 747.

Illinois case law shows an apparent conflict as to the requirements of proving proximate cause in lost chance of survival cases. Two cases, *Curry v. Summer* (1985), 136 Ill. App. 3d 468, 483 N.E.2d 711, and *Russell v. Subbiah* (1986), 149 Ill. App. 3d 268, 500 N.E.2d 138, held that under the "more probably true than not" standard stated by the supreme court in *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301, the plaintiff must show a better than even chance of

a better result, or of survival in a wrongful death action, in order to prove that the doctor's negligence caused the harm. However, *Chambers v. Rush-Presbyterian-St. Luke's Medical Center* (1987), 155 Ill. App. 3d 458, 508 N.E.2d 426, and *Northern Trust Co. v. Weiss Memorial Hospital* (1986), 143 Ill. App. 3d 479, 493 N.E.2d 6, appear to adopt the *Bashline* approach of allowing the issue of proximate cause to go to the jury upon a showing that the doctor's negligence increased the risk of harm.

■ Although we recognize the problems inherent in requiring a plaintiff to prove that the doctor's negligence was more probably than not a proximate cause of the decedent's death, this is clearly the burden of proof in medical malpractice actions as set forth by the Illinois Supreme Court in *Borowski*. It is well established that the appellate court is without authority to overrule the supreme court or to modify its decisions. (*Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 552, 457 N.E.2d 1.) Thus, any alteration in the burden of proof regarding proximate cause as was done in *Bashline* would have to come from the supreme court. Also, we note that the Illinois Wrongful Death Act specifically requires proof that the negligent conduct caused the death. (Ill. Rev. Stat. 1987, ch. 70, par. 1.) In order to adopt the suggestion of the commentators that a plaintiff be compensated for a reduction in the decedent's chance of survival, an amendment to the statute would be needed.

■ As stated earlier, the evidence in the case at bar is far too insubstantial to support a jury verdict that it was more probably true than not that the defendant's negligence was a proximate cause of John Hare's death. For this reason, the trial court properly directed a verdict in favor of the defendant.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.