MELVIN SAXTON, Plaintiff-Appellant, v. TOUSSAINT G. TOOLE, Defendant-Appellee.

First District (6th Division) No. 1—91—3208

Opinion filed December 18, 1992.—Rehearing denied February 2, 1993.

Joseph L. Goldberg and Keith A. Goldberg, both of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (William C. Anderson III, Hugh C. Griffin, and Diane I. Jennings, of counsel), for appellee.

JUSTICE GIANNIS delivered the opinion of the court:

Plaintiff, Melvin Saxton, instituted this action seeking recovery for personal injuries allegedly sustained as a result of negligent medical treatment by defendant, Toussaint G. Toole, M.D. After the jury returned a verdict for defendant, the trial judge granted plaintiff's motion for a new trial. During the subsequent trial, the court entered a directed verdict in favor of defendant at the close of the plaintiff's case. This ruling was predicated upon the trial judge's determination that plaintiff had failed to present sufficient evidence on the issue of proximate cause to warrant submitting the case to the jury. Plaintiff appeals, asserting that his claim against defendant should have been decided by the jury.

Plaintiff alleged that as of May 19, 1983, he suffered from hearing loss in his left ear and that this condition had existed for several years. He consulted defendant, an otolaryngologist who specialized in treatment of diseases of the ear, nose, and throat. After performing certain audiological tests, defendant performed an exploratory tympanotomy on plaintiff's left ear. According to defendant, this procedure was necessary to rule out or to surgically repair

ossicular discontinuity. Plaintiff asserted, however, that ossicular discontinuity was not the focus of the surgery. Plaintiff alleged that the purpose of the surgery was to determine the existence of stapes otosclerosis and that defendant knew that this condition would require a stapedectomy with insertion of a prosthesis.

During the subject surgery, the defendant ultimately concluded that a stapedectomy was required. Defendant further concluded that a standard 4.75-millimeter prosthesis was required to complete the stapedectomy. Although the defendant had ordered five different sizes of stapes prostheses prior to the surgery, not all sizes were available. The 4.75-millimeter prosthesis was one of those which were unavailable even though they had been ordered. Because the 4.75-millimeter prosthesis was not available at the time of the surgery, defendant terminated the surgery without completing the stapedectomy.

Plaintiff ultimately underwent two additional surgeries to correct his hearing loss.

Plaintiff asserted that defendant was negligent for his failure to ascertain and have available the proper prosthesis at the time of the subject surgery, thereby causing plaintiff to endure two subsequent surgeries to correct his hearing loss.

In the plaintiff's case in chief, defendant was called as a witness pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1102). Defendant testified that after his initial examination, he concluded that plaintiff suffered from a conductive hearing loss in the left ear. Defendant then ordered an audiogram and an impedance test to be done by an audiologist. According to defendant, the results of these tests indicated that plaintiff's hearing loss was caused by ossicular discontinuity. Defendant testified that prior to the surgery, he did not suspect that plaintiff's condition was caused by a problem with his stapes bone.

Defendant stated further that the purpose of the subject surgery was to verify or to rule out the existence of ossicular discontinuity. During the surgery, defendant discovered that plaintiff's hearing loss was not caused by ossicular discontinuity. When he opened plaintiff's inner ear, defendant observed a condition which he believed to be a stapes fixation and which required a stapedectomy. After taking the proper measurement, defendant determined that a 4.75-millimeter prosthesis was necessary to perform the stapedectomy.

Defendant testified he had ordered five different sizes of stapes prosthesis because it was an opportunity to restock and because he

thought it would be wise to have them available in the event that stapes replacement was necessary. As previously noted, some of the prostheses which had been ordered were unavailable. The 4.75-millimeter prosthesis was among those which were unavailable. Because this device was unavailable, defendant terminated the surgery and closed plaintiff's inner ear without completing the stapedectomy.

Plaintiff's counsel did not ask defendant whether he observed any fibrosis of the malleus and the incus bones during the May 19, 1983, surgery on plaintiff's left ear.

Plaintiff testified on his own behalf that prior to the surgery, defendant advised him that he suffered from a conductive hearing loss in his left ear which involved a fixation of the stapes bone. Plaintiff stated that defendant also advised him that he would perform surgery to free the fixed stapes bone or replace it with a wire prosthesis which would correct his hearing loss. Plaintiff stated that after the surgery was terminated, defendant told him on two different occasions that the wrong prosthesis had been sent by the manufacturer.

Plaintiff testified further that in September 1983, he consulted Dr. James Campbell, another otolaryngologist. On March 24, 1984, plaintiff underwent another corrective stapedectomy in order to cure his hearing loss. Although Dr. Campbell replaced plaintiff's stapes bone with a 4.5-millimeter stapes prosthesis, this procedure failed to correct plaintiff's hearing loss. In October 1984, plaintiff consulted Dr. Richard Buckingham. On October 18, 1984, plaintiff underwent a third surgery performed by Dr. Buckingham which resulted in a return of his normal hearing function.

Plaintiff also called Dr. Richard A. Buckingham, who testified that he first saw the plaintiff on October 5, 1984. After performing a tuning-fork test, an audiogram, and a hearing test, Dr. Buckingham proposed surgery in order to determine the cause of the hearing loss and to perform an operation to improve the hearing in plaintiff's left ear.

At the time of this surgical procedure, Dr. Buckingham discovered that the prosthesis previously inserted by his former student, Dr. Campbell, was too short. Dr. Buckingham also discovered that two other bones in plaintiff's middle ear, the malleus and the incus, were fixed by some form of fibrosis. Dr. Buckingham replaced the stapes prosthesis and did further surgery to free the malleus and the incus. Following this procedure, the hearing in plaintiff's left ear was restored.

Dr. Buckingham also testified as to the standard of care which governed the conduct of reasonably well-qualified otolaryngologists practicing in Chicago, Illinois, in 1983. Dr. Buckingham stated that he believed it would be a deviation from that standard of care to proceed with a stapedectomy intended to correct a fixed stapes bone where only one prosthetic device was available, although five such devices had been ordered prior to the surgery. Dr. Buckingham acknowledged, however, that where the pre-operative diagnosis was ossicular discontinuity, it would be within the standard of care to perform surgery with only the devices needed to correct ossicular discontinuity available.

Dr. Buckingham stated further that he had not determined how long the plaintiff's malleus and incus had been fixed, but he had to assume that this condition existed in May 1983. According to Dr. Buckingham, replacement of plaintiff's stapes with a prosthetic device would not have cured plaintiff's hearing problem because the malleus and the incus bones were also diseased. Dr. Buckingham testified that further surgery would have been necessary to correct this condition, and the stapes prosthesis would not have functioned properly in the absence of the additional surgical procedure. Buckingham concluded that, without freeing the malleus and the incus, the hearing in plaintiff's left ear would not have been restored merely by inserting the appropriate prosthesis.

Dr. Buckingham was not asked and did not render any opinion as to whether defendant and Dr. Campbell had been negligent in failing to discover and to correct the fibrosis of the malleus and the incus.

After plaintiff rested his case, defendant moved for a directed verdict, asserting that plaintiff had failed to establish proximate cause. Specifically, defendant contended that plaintiff had presented no evidence that the two subsequent surgeries could have been avoided and plaintiff's hearing would have been restored if defendant had inserted the proper stapes prosthesis on May 19, 1983.

In opposition to this motion, plaintiff's counsel stated "[w]e don't know what would have happened if he placed it in there, 4.75, whether he would have seen Dr. Buckingham or whether he would have developed this particular condition. There's nothing in the testimony."

The trial court initially denied defendant's motion for a directed verdict. This ruling was predicated upon the court's finding that Dr. Buckingham had not testified that, based upon a reasonable degree of medical certainty, the malleus and incus were fixed in May 1983

and that the insertion of a 4.75-millimeter prosthesis would not have corrected plaintiff's hearing loss.

Counsel for defendant then stated his intention to recall Dr. Buckingham, who was still under subpoena, to elicit such testimony. Thereafter, the trial judge and counsel for both parties had a discussion off the record. Following this discussion, the trial judge stated that he and both attorneys had participated in a telephone conversation with Dr. Buckingham.

The trial judge stated on the record that during the conference call, he reminded Dr. Buckingham that he was still under oath to answer questions truthfully. The judge then asked the doctor whether he had an opinion, based upon a reasonable degree of medical and surgical certainty, as to whether the fibrosis of the malleus and the incus was present in the plaintiff's left ear on May 19, 1983. Dr. Buckingham stated his opinion that the fibrosis must have existed at that time.

The trial judge then asked whether, based upon a reasonable degree of medical and surgical certainty, plaintiff's hearing loss would have been corrected if the fibrosis had not been present on May 19, 1983, and a 4.75-millimeter prosthetic device had been inserted in plaintiff's left ear. Dr. Buckingham responded that he believed plaintiff's hearing would have been restored under those circumstances.

Defendant again moved for a directed verdict based upon the lack of sufficient evidence on the element of proximate cause. Plaintiff's counsel opposed the motion, arguing that defendant's testimony did not reflect whether the fibrosis was present when he operated on plaintiff's ear.

Defense counsel then made an offer of proof which consisted of Dr. Buckingham's sworn answers to the questions posed by the trial court during the conference call. Counsel for plaintiff did not object to this offer of proof and made no statement on the record that he had objected prior to the court's questioning of the doctor over the telephone. Counsel for plaintiff also did not dispute or contradict the trial court's recitation of those questions and answers. The trial judge specifically noted that he had asked both attorneys during the conference call whether they had any other questions for Dr. Buckingham.

Based upon the sworn statements of Dr. Buckingham, the trial court granted defendant's motion for a directed verdict. This ruling was based upon the court's finding that plaintiff had failed to

present sufficient evidence to establish that defendant's conduct had proximately caused plaintiff's injuries.

Plaintiff appeals the directed verdict in favor of defendant.

Plaintiff initially asserts that the court erred in directing a verdict in favor of defendant because there remained a question of fact as to whether defendant's conduct proximately caused plaintiff's injuries. Specifically, plaintiff alleges that it was for the jury to decide whether the fixation of the malleus and the incus bones existed on May 19, 1983.

The trial court's entry of a directed verdict will be affirmed where the evidence, viewed in the light most favorable to the plaintiff, so overwhelmingly favors the defendant that no contrary verdict based on that evidence could ever stand. *Mort v. Walter* (1983), 98 Ill. 2d 391, 396, 457 N.E.2d 18; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.

The plaintiff must present at least some evidence on every element essential to his cause of action (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55, 407 N.E.2d 43; *Pumala v. Sipos* (1987), 163 Ill. App. 3d 1093, 1098, 517 N.E.2d 295), and a directed verdict in favor of the defendant is appropriate where the plaintiff has not established a *prima facie* case (*Pumala*, 163 Ill. App. 3d at 1098).

In order to prove a case of negligence in treatment against a medical professional, the plaintiff must establish (1) the proper standard of care against which the professional's conduct must be measured; (2) a negligent failure to comply with the standard; and (3) that the injury for which the suit is brought had as one of its proximate causes the negligence of the professional. (*Pumala*, 163 Ill. App. 3d at 1098; *Ingle v. Hospital Sisters Health System* (1986), 141 Ill. App. 3d 1057, 1064, 491 N.E.2d 139.) Because jurors are not skilled in the practice of medicine, a plaintiff must present expert testimony to establish these elements. *Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 297, 529 N.E.2d 552; *Purtill v. Hess* (1986), 111 Ill. 2d 229, 241-42, 489 N.E.2d 867; *Rohe v. Shivde* (1990), 203 Ill. App. 3d 181, 192-93, 560 N.E.2d 1113.

In the absence of expert testimony that any act by the defendant could be said, within a reasonable degree of medical certainty, to have caused the plaintiff's injuries, it would be impossible for a jury verdict in plaintiff's favor to stand, and a directed verdict would be appropriate. (*First National Bank v. Porter* (1983), 114 Ill. App. 3d 1, 15, 448 N.E.2d 256.) A mere possibility is not sufficient to sustain the burden of proof of proximate cause. The causal

connection must not be contingent, speculative, or merely possible. *Pumala*, 163 Ill. App. 3d at 1099.

■ In the instant case, plaintiff failed to present any evidence on the element of proximate cause. Our review of the record reflects that plaintiff's counsel never questioned defendant about the existence of fibrosis of the malleus and incus bones at the time of the first surgery. Dr. Buckingham testified on cross-examination that plaintiff's hearing loss was caused by fibrosis which would not have been corrected by insertion of a stapes prosthesis and that he had to assume this condition was present on May 19, 1983. No evidence was presented to establish that there was no fibrosis of the malleus and the incus on May 19, 1983. Thus, plaintiff did not offer any expert testimony that, based upon a reasonable degree of medical certainty, insertion of a proper stapes prosthesis would have corrected plaintiff's hearing loss and avoided further surgery. Because the record is devoid of any evidence on this essential element of plaintiff's claim, no cause was presented for the jury's consideration, and the entry of a directed verdict for the defendant was proper. See *Mayer v. Baisier* (1986), 147 Ill. App. 3d 150, 155, 497 N.E.2d 827; *Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42, 48, 463 N.E.2d 216.

Plaintiff contends that the evidence presented a question of fact as to whether the fibrosis of the malleus and the incus bones existed on May 19, 1983, and the jury should have decided this issue. In support of this argument, plaintiff relies upon the report prepared by Dr. Campbell which indicated that on March 14, 1984, "the mobility of the malleus and incus were [*sic*] ascertained and noted to be essentially normal." The record reflects, however, that Dr. Campbell was never called as a witness, and his report was never introduced into evidence. This report, which was attached as an exhibit to plaintiff's post-trial motion, was inadmissible hearsay. (See *Mayer*, 147 Ill. App. 3d at 157.) We hold, therefore, that Dr. Campbell's operative report does not provide an adequate basis to support reversal of the directed verdict entered by the trial court.

■ Plaintiff also contends that it was reversible error for the trial judge to consider information obtained during the conference call to Dr. Buckingham.

Initially, we note that there in no indication in the record that plaintiff's counsel raised an objection prior to the court's questioning of the doctor over the telephone. Counsel also did not object to the defendant's offer of proof, which consisted of the sworn answers given by the doctor during that telephone conversation. The

record also discloses that plaintiff's counsel did not dispute or contradict the trial court's recitation of those questions and answers, and the trial judge specifically noted on the record that he had asked both attorneys during the conference call whether they had any other questions for Dr. Buckingham.

A party cannot assert as reversible error actions of the trial court which were committed pursuant to that party's stipulation or acquiescence. (*Thomas v. First National Bank* (1985), 134 Ill. App. 3d 192, 212, 479 N.E.2d 1014.) Where a party has induced the trial court to make an error or has acquiesced in the making of an error, the party may not assign that same matter as error on appeal. *Thomas*, 134 Ill. App. 3d at 212.

In the case at bar, the record indicates that counsel for plaintiff acquiesced and participated in the trial court's telephone conversation with Dr. Buckingham. Consequently, plaintiff cannot assert this matter as reversible error on appeal.

Yet, even if this issue had been properly preserved for appeal, it would not mandate reversal of the trial court's ruling. The statements by Dr. Buckingham during the conference call were made after the trial court reminded the doctor that he was still under oath, and counsel for both parties were afforded an opportunity to question him. Careful examination of the record reveals that Dr. Buckingham's answers to the court's questions merely restated his prior testimony that the plaintiff's hearing loss would not have been corrected by insertion of the appropriate prosthesis because of the fibrosis of the malleus and the incus. Thus, Dr. Buckingham's answers to the trial judge's questions did not constitute new or additional evidence not presented in open court. We find that, even in the absence of Dr. Buckingham's statements during the conference call, plaintiff failed to make a *prima facie* showing on the element of proximate cause. We hold, therefore, that the trial court's entry of a directed verdict for defendant was proper because it was supported by the testimony given in open court.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

EGAN, P.J., and McNAMARA, J., concur.