668 N.E.2d 94 (1996)
282 Ill. App.3d 363
217 Ill.Dec. 909
Hilda AGUILERA, individually and as Special Administratrix of the Estate of Salvador Aguilera, deceased, and as mother and next friend of Leticia Aguilera and Salvador Aguilera, Jr., Minors, Plaintiff-Appellant,
v.
MT. SINAI HOSPITAL MEDICAL CENTER, Dr. Karen Cervenka, and Dr. Norman Kohn, Defendants-Appellees.
No. 1-94-1893.
Appellate Court of Illinois, First District, Fourth Division.
June 27, 1996.
*95 Robert A. Holstein and David L. Poindexter of Holstein, Mack & Klein, Chicago, for Appellant.
Lord, Bissell & Brook, Chicago (Hugh C. Griffin, Diane I. Jennings, Leslie J. Rosen and Stephanie A. Burris, of counsel), for Appellee Mt. Sinai Hospital.
French, Kezelis & Kominiarek, P.C., Chicago (Randall J. Gudmundson, Michael R. Webber and Julie A. Neidhardt, of counsel), for Appellee Norman Kohn.
Justice CAHILL delivered the opinion of the court:
We review an action for survival and wrongful death based upon medical malpractice. The jury found for the plaintiff and awarded substantial damages. The trial court entered judgment notwithstanding the verdict, finding "that no reasonable fact finder could conclude that the death of the * * * decedent was proximately caused by the failure * * * to conduct a CT scan * * * in a more timely fashion." Plaintiff appealed. We affirm.
Plaintiff contends on appeal that it was error to enter a judgment notwithstanding the verdict when expert medical testimony was offered to show that a delay in administering a CT scan deprived the decedent of a *96 significant chance to survive. Plaintiff contends that the testimony meets the standard in Illinois for establishing probable cause in medical malpractice actions.
A judgment notwithstanding the verdict should be entered only when all the evidence, viewed in an aspect most favorable to the opponent of the motion, so overwhelmingly favors the movant that no contrary verdict based on that evidence could stand. Pedrick v. Peoria & Eastern R.R. Co., 37 Ill.2d 494, 229 N.E.2d 504 (1967). A motion for a judgment notwithstanding the verdict presents a question of law and will be granted only if there is a total failure or lack of evidence to prove an essential element of the plaintiff's case. Merlo v. Public Service Co., 381 Ill. 300, 45 N.E.2d 665 (1942).
The record reveals that in the early morning hours of April 19, 1987, Salvador Aguilera was logged into the emergency room of Mt. Sinai hospital in Chicago complaining of headache and numbness on the left side of his body. His brother, who drove him to the hospital, said they arrived at 2 a.m. Hospital records indicate an arrival at 3 or 3:15 a.m. Whenever the hour, there is disagreement among the expert witnesses about the care and treatment Aguilera received over the next several hours in the emergency room. Plaintiff expert medical witnesses testified that the treatment deviated from the standard of care. Defense expert medical witnesses testified that it did not. Whether there is a deviation from the standard of care and whether the deviation was a proximate cause are normally questions for the jury. Borowski v. Von Solbrig, 60 Ill.2d 418, 424, 328 N.E.2d 301 (1975).
Aguilera was formally admitted to the hospital, taken from the emergency room, and assigned to a room at approximately 7 a.m. At about 8:20 a.m. he began to suffer seizures. At about 9:30 a.m. he was given a CT scan which revealed a massive intracerebral hemorrhage measuring 4 by 6 centimeters. All experts who testified agreed that a hemorrhage of this size is fatal. Aguilera lapsed into a coma that day and died of cardiac arrest three days later. The death certificate recorded that Aguilera died from cardiopulmonary arrest secondary to a cerebral hemorrhage.
Both plaintiff expert medical witnesses testified that the failure of the emergency room physician to order an earlier CT scan while Aguilera was undergoing treatment and observation in the emergency room was a deviation from the standard of care. Dr. Glenn Hamilton, a board-certified emergency medicine physician testified that, given Aguilera's presenting signs and symptoms, an immediate CT scan should have been performed. This would have permitted the immediate medical and possible surgical intervention that, in Dr. Hamilton's opinion, would have saved Aguilera's life. The following colloquy then occurred between plaintiff's attorney and Dr. Hamilton:
"Q: In your opinion, Doctor, again to a reasonable degree of medical certainty, had that delay been avoided, would Mr. Aguilera survive?
A: My opinion is that he would.
* * * * * *
In my mind at that point his chance of survival, if appropriately diagnosed, is greater than fifty percent.
* * * * * *
Q: Do you believe the delay is directly related to his death?
A. I think the two are definitely related."
Plaintiff's second expert, Dr. Dragomir Vuckovich, a board certified neurologist, testified that it was critical that the CT scan be performed early, not only to permit effective treatment of the patient, but to determine the precise location and size of the hemorrhage while still treatable. In his opinion the CT scan of Mr. Aguilera, taken six to seven hours after he entered the emergency room, showed an inoperable hemorrhage. But it was significant, in Dr. Vuckovich's opinion, that Aguilera arrived at the emergency room conscious and alert, and remained so for several hours. This indicated that there had not yet been involvement of the brain stem. Dr. Vuckovich surmised, based on Aguilera's clinical signs, that if a CT scan had been performed earlier it would have shown a small bleed in the thalamus. It is not the *97 hemorrhage itself, he testified, but pressure on the brain stem that causes the greatest damage and eventual death. Until Aguilera suffered seizures shortly after 8 a.m. he had no clinical signs of severe brain involvement and his level of consciousness and vital signs were encouraging factors. Dr. Vuckovich was then asked the following question and gave the following answer:
"Q: What is your opinion as to what the percentage chance of Mr. Aguilera's survival would have been with prompt treatment?
A: At his age at the clinical course that he displayed from 3:20 a.m. until 9 o'clock, I believe his survival, it would have been in the region of 75, 80 percent."
Plaintiff argues that the testimony of her experts is evidence of proximate cause. Plaintiff insists in her brief that she did not style her proof as a "lost chance of survival" because she did not have to, since her experts unequivocally expressed a survival rate of greater than 50% had Aguilera been appropriately treated. That, according to plaintiff, without citing to a case, meets the standard for proximate cause in Illinois when the claim is wrongful death based upon medical negligence. Plaintiff also cites to Northern Trust Co. v. Louis A. Weiss Memorial Hospital, 143 Ill.App.3d 479, 97 Ill.Dec. 524, 493 N.E.2d 6 (1986), Chambers v. Rush-Presbyterian, 155 Ill.App.3d 458, 108 Ill.Dec. 265, 508 N.E.2d 426 (1987), and the Restatement (Second) of Torts sec. 323, (1965) for the proposition that a plaintiff demonstrates a proximate cause relationship if the patient lost an opportunity to survive because of defendant's negligence.
Defendant argues in response that the testimony of plaintiff experts failed to establish proximate cause under Illinois law. Plaintiff must establish that it is more probably true than not true that the negligence was a proximate cause of the injury. Borowski, 60 Ill.2d 418, 424, 328 N.E.2d 301. Proximate cause in a malpractice case must be established by expert testimony to "a reasonable degree of medical certainty." First National Bank of Chicago v. Porter, 114 Ill. App.3d 1, 12, 69 Ill.Dec. 796, 448 N.E.2d 256 (1983). Finally, a directed verdict for the defendant is proper when the causal connection between treatment and claimed injury is "contingent, speculative, or merely possible." Saxton v. Toole, 240 Ill.App.3d 204, 210-11, 181 Ill.Dec. 160, 608 N.E.2d 233 (1992).
Defendant argues that a CT scan is a diagnostic tool that cannot alleviate a condition. Plaintiff must prove not only that an earlier CT scan would have revealed the condition, but, under the appropriate standard of care, the diagnosis would have triggered medical or surgical intervention to prevent his death. Defendant stresses that both plaintiff's experts testified that, assuming a prompt CT scan, they would then have deferred to a neurosurgeon to decide whether surgical intervention was appropriate and what effect it would have had. No one testified that surgical intervention would have been appropriate and that the failure to do so deviated from the standard of care.
We find the defendant's argument persuasive. The absence of expert testimony that, under the appropriate standard of care, an analysis of an earlier CT scan would have inevitably led to surgical intervention creates a gap in the claim of proximate causation fatal to plaintiff's proof. The gap renders plaintiff's expert opinions that Aguilera would have had more than a 50% chance of survival after surgery "contingent, speculative, or merely possible." Saxton, 240 Ill. App.3d 204, 210-11, 181 Ill.Dec. 160, 608 N.E.2d 233.
The only two neurosurgeons who testified agreed with the treating neurologist that even with an earlier CT scan surgery would not have been appropriate or ordered. While the record reveals certain medicines were available as an alternative to surgery, neither of plaintiff's experts testified that these medicines should have been administered or would have changed the outcome. There was, as a result, no conflicting expert testimony that the failure to order surgical or medical intervention based on an earlier CT scan would have deviated from the standard of care. Absent such conflict there was nothing for the jury to weigh.
We conclude thatdespite plaintiff's statement to the contrarythe expert opinions *98 offered in this case were based upon a "lost chance of survival" theory. We agree that there is support in Illinois case law and the Restatement for a cause of action based upon a lost chance of survival, Northern Trust Co., 143 Ill.App.3d 479, 97 Ill.Dec. 524, 493 N.E.2d 6, Chambers, 155 Ill.App.3d 458, 108 Ill.Dec. 265, 508 N.E.2d 426, but we are also persuaded that the reasoning and analysis in Hare v. Foster G. McGaw Hospital, 192 Ill. App.3d 1031, 140 Ill.Dec. 127, 549 N.E.2d 778 (1989) reflects current Illinois law. Hare carefully and thoughtfully reviews the issues involved. Absent direction from the supreme court, we see no reason to depart from Hare as an accurate statement of Illinois law.
We need not address plaintiff's other arguments that the court erred by granting, in the alternative, defendant's motion for a new trial, or remittur.
Affirmed.
THEIS and SHEILA M. O'BRIEN, JJ., concur.