JAMES B. SCHLUETER, Plaintiff-Appellant, v. ROBERT M. BARBEAU, Defendant-Appellee.

Fifth District    No. 5—93—0143

Opinion filed June 10, 1994.

Brian Wendler, of Jon G. Carlson & Associates, P.C., of Edwardsville, for appellant.

Rosemary D. McGuire, of Brennan, Cates & Constance, of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

James B. Schlueter brought an action against Robert M. Barbeau to recover damages allegedly incurred as a result of an automobile collision between the parties. The trial court entered judgment on the jury verdict in favor of defendant. Plaintiff appeals.

The determinative issue on appeal is whether the trial court committed reversible error when it refused to bar medical testimony as a sanction for defendant's *ex parte* communication with plaintiff's treating physician, under *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 499 N.E.2d 952.

The parties were involved in an automobile collision on November 30, 1987. In an amended complaint plaintiff alleged that, as a result of the injuries incurred in the accident, he was no longer able to exercise, was unable to lose weight due to the lack of exercise, had increased cholesterol levels due to lack of exercise, and had elevated blood pressure due to stress. Plaintiff claimed that these factors, in combination with a preexisting, undiagnosed heart condition, contributed to his heart attack in December 1991.

On July 29, 1992, only 12 days before the scheduled trial setting, counsel for the parties discussed the fact that defendant had failed to disclose any witness to rebut plaintiff's medical testimony connecting the heart attack to the accident. Defendant's attorney then scheduled the evidence deposition of plaintiff's cardiothoracic surgeon, Dr. Huddleston, which was to be taken on the evening of the first day of trial.

Plaintiff's counsel objected to the late disclosure and deposition of Dr. Huddleston and moved to quash the deposition notice. At the hearing on plaintiff's motion, defendant's attorney assured the court that he had no idea what Dr. Huddleston was going to say. The trial court denied plaintiff's motion to quash.

In his opening statement on the following day, defense counsel referred to three witnesses that he had not disclosed as persons with knowledge of relevant facts, although proper requests for disclosure had been made. As a result, the trial judge declared a mistrial and told defendant's attorney, "From what you've told the jury [plaintiff] may be entitled to summary judgment based on your opening statement." The court further admonished defense counsel for his reference to Dr. Davis by stating, "you waited tactfully [*sic*] until the

morning of trial in opening statements to now suddenly say, this Dr. Davis, he won't be here but he treats the partner of plaintiff's lawyer here. I can't believe you did that. I really can't and it's not proper in this trial courtroom." Trial was rescheduled for September 29, 1992.

The record indicates that defendant's attorney and Dr. Huddleston had engaged in *ex parte* communications about plaintiff, without plaintiff's consent. The extent of the conversation is in dispute. Defendant claims that there was only minimal, insignificant contact between Dr. Huddleston and defendant's attorney. Plaintiff, however, argues that the contact requires sanctions.

The leading case in this area, *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 499 N.E.2d 952, held that *ex parte* communications between defense counsel and a plaintiff's treating physician are prohibited as against public policy. The court reasoned that public policy strongly supports a patient's right to rely on the ethical obligation of his or her treating physician to protect the fiduciary and confidential nature of the physician-patient relationship by providing medical information to a legal adversary only through authorized methods of discovery. *Petrillo*, 148 Ill. App. 3d 581, 499 N.E.2d 952.

■ *Petrillo* stresses that there are two basic reasons for holding *ex parte* communications violative of public policy. First, public policy favors the confidentiality of the patient-physician communications. Second, nonconsensual conferences between plaintiff's physician and defense counsel violate the fiduciary relationship between physician and patient. (*Petrillo*, 148 Ill. App. 3d 581, 499 N.E.2d 952.) Therefore, even if no confidential information is divulged, a physician's actions may constitute a breach of his fiduciary duty to the plaintiff. The doctor's fiduciary duty protects against potential harm to the physician-patient relationship regardless of whether any specific disclosures of the patient's confidences were made. *Mondelli v. Checker Taxi Co.* (1990), 197 Ill. App. 3d 258, 554 N.E.2d 266.

In the instant case, when plaintiff's attorney attempted to ascertain whether there had been a breach of the confidential relationship or the fiduciary duty, he was interrupted by defense counsel:

> "Q. Would you agree with me, Doctor, that your conversation with Mr. Nester as it pertained to Mr. Schlueter's treatment or your opinions was improper?
>
> MR. NESTER: Let me object to the form of the question, and it's asking for a legal conclusion. At this point, obviously, I am not Dr. Huddleston's attorney, but I would advise him that anything that he may answer in this regard he may want to seek the services of an attorney because I—who knows what Mr. Wendler is going to do."

Despite defense counsel's apparent attempt to protect the nature and content of his discussion with the doctor, we feel that there is no question that the doctor breached the fiduciary duty he owed to the patient.

Defendant argues that the trial court correctly refused to sanction defendant for the *ex parte* communication since it was a *de minimis* contact, initiated by the doctor, and resulted in no tainting of the doctor's testimony. Defendant cites *Mahan v. Louisville & Nashville R.R. Co.* (1990), 203 Ill. App. 3d 748, 561 N.E.2d 127, for the proposition that a *Petrillo* violation does not occur where the communication is of a *de minimis* nature and does not result in the disclosure of any private or confidential information regarding the patient. (*Mahan*, 203 Ill. App. 3d at 754, 561 N.E.2d at 131-32.) The *Mahan* court determined that no *Petrillo* violation occurred where the defense counsel's communication with the plaintiff's physician lasted no more than 30 seconds and occurred just prior to the physician's deposition. The challenged communication involved defense counsel asking the physician whether he had viewed the plaintiff's CT scans and the physician replying that he did not have the time to view them and intended to testify based upon the report of the radiologist who had viewed the tests. *Mahan* held that, under those circumstances, and since the plaintiff had failed to show that the communication had caused him prejudice or that the physician had acted improperly, a new trial was not warranted. *Mahan*, 203 Ill. App. 3d at 754, 561 N.E.2d at 131.

■ In the present case, however, defendant's counsel knowingly and deliberately became involved in an *ex parte* communication with plaintiff's treating physician. Unlike *Mahan*, the exact nature and duration of the communication in this case is unknown. However, Dr. Huddleston at one point admitted that during the telephone conversation with defendant's attorney he expressed his opinion that plaintiff's heart attack was not caused by his automobile accident with defendant. Furthermore, in *voir dire*, plaintiff's attorney asked Dr. Huddleston, "During that conversation did Mr. Nester inform you that you should not discuss your opinions or your treatment of Mr. Schlueter with Mr. Nester?" To that question Dr. Huddleston replied: "I don't think so. I don't think so."

Obviously, the causal connection between the collision and the cardiac problem, or lack thereof, is one of the crucial questions in this case. This is not the *de minimis* type of situation that was presented in *Mahan*; rather, the communication went to an essential element of the case. Under the circumstances, the trial court erred in refusing to impose sanctions. We reverse. On retrial defendant is not

to be allowed to present Dr. Huddleston. See *Nastasi v. United Mine Workers of America Union Hospital* (1991), 209 Ill. App. 3d 830, 567 N.E.2d 1358.

Plaintiff also argues that the trial court erred in its refusal to grant a directed verdict for plaintiff on the issue of liability and in its refusal to grant plaintiff's motion for a judgment notwithstanding the verdict or for a new trial because defendant offered no evidence to establish any fault by plaintiff and offered no testimony to rebut certain aspects of plaintiff's damages.

■ In *Jones v. Petrolane-Cirgas, Inc.* (1986), 146 Ill. App. 3d 153, 496 N.E.2d 509, this court held that the standards relating to the direction of verdicts and to the granting of new trials are different. Verdicts ought to be directed only in those cases in which all of the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand. On the other hand, a verdict will be set aside and a new trial ordered if a verdict is contrary to the manifest weight of the evidence. (*Jones*, 146 Ill. App. 3d 153, 496 N.E.2d 509; see also *Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32.) We believe that the record in this case reveals that the jury heard conflicting evidence on issues of liability and medical causation with respect to the claimed injuries. Viewed in a light most favorable to defendant, there was evidence to support the jury verdict. Therefore, we affirm the trial court's denial of plaintiff's motion for a directed verdict and motion for judgment notwithstanding the verdict.

■ Plaintiff also raises several charges of improper conduct against defendant's attorney, but we will not address those issues at this time. We trust that any questionable conduct will not be repeated in retrial.

We will address the issue raised regarding the proper jury instruction on proximate cause since it is likely to recur on retrial. Plaintiff argues that the short-form proximate cause instruction used by the trial court was misleading because it could lead the jury to conclude that since defendant's conduct was not the only cause of plaintiff's injuries it was not a proximate cause. We agree.

The trial court's short-form instruction read: "When I use the expression, 'proximate cause,' I mean *that* cause which, in the natural or probable sequence, produced the injury complained of." (Emphasis added.)

Plaintiff argues that the trial court should have used the long-form proximate cause instruction (Illinois Pattern Jury Instructions, Civil, No. 15.01 (3d ed. 1989)):

"When I use the expression 'proximate cause,' I mean any cause

which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."

Prior to the adoption of comparative negligence by the Illinois Supreme Court in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, it had been held that the use of the long-form instruction was improper where there was only one defendant and one plaintiff. (See *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301.) But after the adoption of comparative negligence, use of the long-form instruction in cases with one plaintiff and one defendant was no longer considered improper. See, *e.g.*, *Casey v. Baseden* (1986), 111 Ill. 2d 341, 490 N.E.2d 4; *Drake v. Harrison* (1987), 151 Ill. App. 3d 1082, 503 N.E.2d 1072; *Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.* (1991), 217 Ill. App. 3d 94, 576 N.E.2d 918.

*Chambers v. Rush-Presbyterian-St. Luke's Medical Center* (1987), 155 Ill. App. 3d 458, 508 N.E.2d 426, noted that the comment to the instruction (Illinois Pattern Jury Instructions, Civil, No. 15.01, Comment (2d ed. 1971)) indicates that it is appropriate to use the long form where there is evidence that something or someone else caused the injury. *Chambers* held that it was appropriate for the court to use the long form of the instruction where the defendant doctors' defense was that something other than their negligence, specifically plaintiff's preexisting cancer, contributed to his death. *Chambers*, 155 Ill. App. 3d at 467, 508 N.E.2d at 432.

■ Similarly, plaintiff alleges that he had a preexisting heart condition and preexisting arthritis, which, when coupled with defendant's negligence, caused his heart attack. Plaintiff contends that in light of the fact that there were other causes which may have contributed to plaintiff's heart attack, the use of the short-form instruction was misleading. The trial court used in its short form the term "that cause," rather than "a cause" or "any cause." We believe that by using the word "that," the short-form instruction suggested to the jury that they were limited to finding a single cause of plaintiff's injuries. In light of the comment to the instruction, directing courts to employ the long form of the instruction when there is evidence that something other than the defendant's negligence proximately caused the injury, we find the trial court erred in using the short-form instruction with the phrase "that cause."

In conclusion, we affirm the trial court's denial of plaintiff's motions for a directed verdict and a judgment notwithstanding the

verdict. We reverse and remand the case to the trial court for a new trial in which defendant is barred from using the testimony of Dr. Huddleston. In addition, if, on retrial, the evidence on causation is similar to the evidence during the first trial, the court should give the long form of the proximate cause instruction.

Affirmed in part; reversed in part and remanded with instructions.

GOLDENHERSH and MAAG, JJ., concur.